WESTERN UNION TELEGRAPH COMPANY v. GEO. W. BIRCHFIELD.

Decided November 25, 1896.

1. Telegraph Company—Mental Suffering—Proximate Cause—Intervening Voluntary Act.

Plaintiff, at Holland, Texas, summoned by telegram to the death bed of his mother in Arkansas, wired his brother at Waco, an intervening point, to accompany him. The telegrams not being delivered owing to the negligence of the telegraph company, and no answer being received, through concern about his brother, who was in bad health, plaintiff stopped over at Waco, and thereby failed to reach his mother till after her death. Held, that the trial court properly ruled that he could not recover for mental suffering for failure to reach his mother before her death.

2. Same—Remote Damages.

The trial court should have also ruled that plaintiff could not recover for mental suffering arising from the want of his brother's companionship on the journey, though the latter would have gone with him had the message been delivered. Such damages were too remote.

3. Same—Nominal Damages.

For the breach of its contract defendant was liable in such case only for nominal damages, and a recovery of five hundred dollars was, on appeal, reversed and judgment rendered in plaintiff's favor for one dollar with costs of appeal against plaintiff.

APPEAL from the District Court of McLennan County. Tried below before Hon. SAM. R. SCOTT.

*Geo. H. Fearons* and *Field, Brown & Camp*, for appellant.—The message announcing the illness of the mother was promptly delivered; plaintiff could have reached his mother prior to her death; his abandoning at Waco the train on which he was going to his mother's bedside was the cause of his failure to reach her before her death, and he cannot recover for an injury he has thus inflicted on himself. Telegraph Co. v. Terrell, 30 S. W. Rep., 70.

Plaintiff's fears and uneasiness as to his brother's sickness causing his failure to meet him at the train at Waco were unreal and not shown to be real in his petition, and plaintiff cannot recover for injury to his feelings, thus caused himself, by imagining something to exist that did not in fact exist. McAllen v. Tel. Co., 70 Texas, 243; Rowell v. Tel. Co., 75 Texas, 26.

For the loss of his brother as a traveling companion and his comfort

and consolation on the trip and at his mother's bedside, plaintiff cannot in law be compensated in damages. Rowell v. Tel. Co., cited ante; Tel. Co. v. Strathmeier, 32 N. E. Rep., 871; Hale v. Bonner, 82 Texas, 33; Allsop v. Allsop, 5 H. & N., 534.

[No briefs for appellee are on file.]

FISHER, Chief Justice.—*Statement of Nature and Result of Suit.*— This suit as brought by appellee, Geo. W. Birchfield, is to recover of the appellant, Western Union Telegraph Company, damages for injury to his feelings, caused by a negligent delay in delivery of two telegrams sent by him from Holland, Texas, to his brother, T. L. Birchfield, Waco, Texas, one sent at 5:40 p. m., on the 15th day of April, 1895, reading:

> "T. L. Birchfield, Waco, Texas,
>   "Care Some Hotel.
>     "Sad news. Can you go home?
>           [Signed]          "Geo. W. Birchfield."

The other filed at 6:35 p. m. of the same day, reading:

> "T. L. Birchfield, Waco, Texas,
>   "Care Some Hotel.
> "Can you start home in a. m. Meet me at train. Answer tonight.
>           [Signed]          "Geo. W. Birchfield."

From the allegations of the petition it appears that appellee's mother was at that time dangerously sick near Evening Shade, Arkansas, and that appellee on said day and date had received a telegram from Cushman, Arkansas, reading: "If you want to see your mother, come at once." That, wanting his said brother, T. L. Birchfield, to accompany him on his trip or journey to Evening Shade, he sent the telegrams; his brother not meeting him in response to his telegrams, he stopped off at Waco, and was delayed twelve hours at Waco, and by reason of said delay he failed to reach his mother prior to her death.

His second ground of complaint is that through the negligence of appellant in delivering the telegrams he was deprived of the aid, comfort and solace of his said brother on his trip to Evening Shade, and his companionship and comfort at the bedside of his dying mother.

His third ground of damage is that he suffered great pain of mind and uneasiness about his said brother, because of his failure to meet him at the depot, fearing he was sick.

Appellee was totally damaged in the sum of nineteen hundred and fifty dollars for injury to his feelings, and for the cost of the two telegrams.

Appellant by its answer plead—

First.   A general demurrer.

Second.   A demurrer that "Plaintiff's injury, if any, was caused and

produced by his own acts, in leaving the train at Waco, Texas, and except for it the injury complained of would not have occurred, and plaintiff's petition shows that it was plaintiff's negligence, and not the negligence of this defendant, that caused the injury to plaintiff."

Third. A general denial.

Fourth. A plea of contributory negligence on the part of plaintiff in not giving a better address where his brother could be found.

The demurrers were overruled, and the trial resulted in a judgment in favor of appellee for the sum of five hundred dollars. Motion for new trial was overruled, notice of appeal given, and this appeal is prosecuted upon errors occurring to appellant's prejudice on the trial, assigned and filed in the trial court.

*Statement of the Evidence.*—Geo. W. Birchfield, the appellee, proved that T. L. Birchfield was his brother, and that on the 15th day of April, 1895, his mother, Nancy Stokes, resided near Evening Shade, Arkansas; that on said day he received a telegram from Cushman, Arkansas, sent by J. W. Stokes, reading: "If you want to see your mother, come at once."

"I received that message at Holland, Texas, about 4:30, evening of 15th. There is one railroad passing through Holland—the Missouri, Kansas & Texas. I received the telegram after the train had gone north that day; the next train went north about 4 o'clock next morning. After receiving the telegram from Stokes I sent the following telegram to my brother, reading:

"  'HOLLAND, TEXAS, April 15, 1895.

"  'T. L. Birchfield,

"  'Care Some Hotel, Waco.

"  'Sad news. Can you go home? Will wire you again.

                [Signed]        " 'GEORGE BIRCHFIELD.'

"This telegram was delivered by me to defendant's agent at Holland, about 5:50 p. m. of the 15th. I told him that I wanted my brother to go with me to Arkansas; that she was not expected to live but a short while. I received no reply from my brother, and about one half hour after sending the first message I sent the following message to my brother: 'Can you start home in a. m.? Meet me at train. Answer to-night.' I did not receive any answer to that message. In sending it I told the agent at Holland that my brother was there sick, didn't know whether he would be able to go with me or not, but I wanted to find out how he was getting along before I went home, and if I could not hear from him I could not go home satisfied; he had been in delicate health for some time.

"At 4 o'clock on the morning of the 16th I took the first train coming towards Waco and got off at the 'Katy' depot and looked for my brother. He was not there. I then went to Mr. Holbert's office, supposing he had seen my brother, but Holbert had not come down. I then

went over to the Western Union office, about 7:30; they had not opened. I waited until they came, and asked if they had delivered the messages; don't know that I could recognize the gentleman I asked. He was in the Western Union office behind the railing; he was not doing anything in particular. I did not call for any one in particular. There were some boys in there, but one grown man. He reached over and got the messages and started to hand them to me; I told him I didn't want them; I wanted them delivered. He said to the boys: 'Why haven't these messages been delivered?' He started one of the boys out with the messages to be delivered. Before leaving the office my brother 'phoned me from the hotel to wait. I stayed at the office until he came. The trains then were both gone. I remained in Waco the balance of the day. About 4 o'clock that evening I received an answer to the message sent by me while I was at defendant's office in Waco, stating that mother could not live long.

"I left Waco for my mother's bedside about seven o'clock. My brother did not go with me. I traveled the most expeditious route; there was no other route that I could have gone that I know of. My mother was dead when I got there. She died about one o'clock the morning of the 18th. I got there in the evening about three o'clock.

"I could have reached my mother's bedside before she died if I had kept on the morning I left Holland. I would then have gotten home on the evening of the 17th. I did not go on that morning because I was aware that my brother was in feeble health; had not heard from him for a day or two, and I wanted to know how he was getting along before I went through. The relations that exist between me and my brother are the same as between other brothers. He is my only brother. He would have been a comfort and company to me on the trip.

"When I did not find my brother at the depot, knowing his condition, and also receiving the sad news from home, of course I was right smartly grieved over the affair, and more so when I did not find him; was considerably worried over not finding him here, and also by being delayed here, knowing the condition of my mother.

"When I reached home and found my mother was dead, I suffered pain of mind, just as any other man would have done under the circumstances.

"If I had not got off at Waco and lost the time there I would have reached home before my mother died. I was uneasy about my brother; he had been puny for some six or eight months, and not hearing from him I got more uneasy about him. When I did not receive answer to my messages I believed there was something serious the matter with him, and I don't know but what that and his failure to meet me at the train operated together or had something to do with producing the injury. I knew my brother was in Waco, but did not know exactly where—supposed he was at some hotel; he had been in Waco about thirty days; we corresponded; he might have given me his address, but I had not noticed it. I did not preserve his letters. The population

of Waco I guess is 15,000 or 20,000. After I reached Waco I found out that he was at the Winn House, three or four blocks from defendant's office."

T. L. Birchfield proved that he was in Waco on the 15th of April, 1895; was then stopping at the Winn Hotel on Franklin street, three or four blocks from defendant's office. "I was here for my health. I received the two telegrams sent me by my brother between 8 and 9 o'clock a. m. of the 16th. They were delivered to me by Mr. Winn, proprietor, at the Winn House. If I had received these telegrams on time I would have met my brother at the train on the morning of the 16th and would have gone with him. It was after train time that morning that I met my brother; that is, for the Cotton Belt and Katy going north and east. I did not go with him after receiving the message; did not think from the information I had received before the train left that I would see her alive, and hence did not go. My brother seemed to be very much grieved when I met him, and remained in that condition up to the time he left the place where I was stopping to take the train. The relation between myself and brother is of an affectionate character. I don't know how many hotels there are in Waco; the Winn House is one of the principal hotels. The Western Union is in the habit of delivering messages there; at least, they came there with telegrams while I was there.

"I resided in Bell County on April 15th. I had been in Waco some ten or fifteen days. I was not under treatment of a physician all the time. I had written to my brother, but had not told him where I was stopping. I took dinner at the Winn House on the 15th; I registered when I took dinner. I came back there that night; was a stranger in Waco. I did not go to the depot with my brother that night. I was not seriously sick; was able to get up next morning; think I would have been able to have gone the 700 miles by rail to Cushman and across to Evening Shade at the time my brother started the morning of the 16th, in my then physical condition.

"The cause of my brother's grief that day was my failure to meet him at the train, and his receiving those other telegrams. I knew that was the cause of it by his actions."

The remaining facts in the record bear upon the delivery of the telegrams, and from these facts the conclusion is justified that the appellant was guilty of negligence in failing to deliver the telegrams to T. L. Birchfield in time for him to have met appellee at the depot on the morning of April 16, 1895, in time to have taken the morning trains going North and East.

*Conclusions of Law.*—The charge of the court did not submit to the jury the claim asserted by appellee for damages arising from mental suffering on account of his failure to reach the bedside of his mother before her death. The action of the court in this respect was proper, because from the facts it clearly appears that the failure of appellee to

reach the sick mother before her death was owing to his voluntary conduct in stopping over in his journey and remaining in Waco on the 16th of April. If he had continued his journey and not stopped off at Waco he would have reached his mother before her death.

As to that branch of the case in which the plaintiff sought recovery for the mental suffering arising from the want of the companionship of his brother and the comfort that would result therefrom to him on the journey to the sick mother, the appellant requested a charge to the effect that it was not liable in this respect, which was refused by the court. This charge should have been given. The damages claimed in this particular are too remote. The facts stated do not show that the plaintiff was in a situation to require or need the services and companionship of his brother. As a matter of sentiment it would doubtless have afforded the plaintiff some comfort in the companionship of his brother in the journey to the bedside of the sick mother. He was not needing the brother's assistance, nor was he expecting any aid in that respect, and it is not perceived that the comfort that would arise from the companionship of his brother in this journey would add solace to a mind disturbed or lessen the grief that naturally results in contemplating the near approaching death of the mother. The courts of this State in this class of cases have gone far in extending relief for mental suffering, but no case has been found by us which would justify extending the doctrine of "mental injury" to the extent claimed in this case. If this was a case where assistance in some form was expected by the plaintiff from his brother in order to aid him in his journey, or his presence was desired for some purpose in giving aid, comfort and advice concerning the funeral of the mother, cases could be found which would authorize a recovery, but clearly this is not such a case.

The facts show that the appellant was guilty of a breach of its contract, in that it negligently failed to promptly deliver the messages, as it was in duty bound to do. For this breach of the contract the plaintiff would be entitled to nominal damages, which we find to be the sum of one dollar.

These views necessarily dispose of the entire case, and we hereby reform the judgment of the court below and render judgment in plaintiff's favor for the sum of one dollar, and that as to the other claims for damages the plaintiff recover nothing and the defendant go hence with its costs. The costs of the court below will be taxed against the defendant; the costs of this appeal will be taxed against the plaintiff.

*Reversed and rendered.*

*Henry & Stribling* and *W. C. Halbert,* for appellee, filed a motion for rehearing, in which they contended that the damages in question were recoverable on the authorities following: Tel. Co. v. Coffin, 88

Texas, 94; Stuart v. Tel. Co., 66 Texas, 584; Tel. Co. v. Nations, 82 Texas, 539; Potts v. Tel. Co. 82 Texas, 545.

*Field, Brown & Camp*, filed motion for rehearing on behalf of appellant, contending that under the ruling of the court defendant's general demurrer should have been sustained, the damages claimed and lawfully recoverable not being within the jurisdiction of the court (Rowell v. Tel. Co., 75 Texas, 26), and that it was error to render judgment for nominal damages. In overruling both these motions the following written opinion was pronounced.

FISHER, CHIEF JUSTICE.— *Opinion on Rehearing.*—We have examined the motions for rehearing filed by both parties, and see no reason to disturb the judgment we rendered in the case.

The appellant in its motion for rehearing asks us to reform our judgment and render judgment in its favor, because it insists that the general demurrer should have been sustained, as the facts pleaded are the same as those upon which we based our conclusion that the plaintiff was not entitled to recover more than nominal damages.

The petition, we think, was good when questioned by a general demurrer. The allegations went farther than the proof. It is averred in the petition, in addition to the society and comfort the plaintiff expected from his brother as a traveling companion, that he also expected aid. The petition does not aver what character of aid or services in that respect he expected from his brother, but it does aver that he expected aid. As against a general demurrer it was not necessary or essential that the character of services or aid expected should be minutely set out and described. The motions for rehearing are overruled.

Writ of error refused.                                      *Motions overruled.*