WESTERN UNION TELEGRAPH CO. v. HORN.†

(Court of Civil Appeals of Texas. Texarkana. May 16, 1912. On Motion for Rehearing, June 27, 1912.)

1. TRIAL (§ 252*)—INSTRUCTIONS—EVIDENCE TO SUPPORT.

Where, in an action for mental suffering resulting from failure to deliver a telegram, there was no showing that the person to whom the message was handed for delivery, who was not an employé of the telegraph company, had any authority to receive the message for delivery, but he merely received it as an accommodation to the sender, instructions submitting the issue of his agency were improperly given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

2. TELEGRAPHS AND TELEPHONES (§ 38*)—FAILURE TO DELIVER MESSAGE—AGENCY OF PERSON TO WHOM DELIVERED.

Where a person not an employé of a telegraph company was present in its office as an employé of a railroad company who jointly occupied the office, his receipt of a message for delivery, with notice that damages would likely result in delay, would not charge the company with such notice where he merely hung the message on a hook, and did not communicate its importance to the company's operator.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

On Motion for Rehearing.

3. TELEGRAPHS AND TELEPHONES (§ 68*) — FAILURE TO DELIVER MESSAGE—DAMAGES— MENTAL ANGUISH.

No recovery may be had for negligence of a telegraph company in the delivery of a message telling of the death of a baby to the sister of its mother, where the only damage alleged or shown was the lack of comfort which such sister could have given the mother, and the mother was surrounded by her husband and other relatives and friends, as no additional mental anguish could have been caused by the absence of the sister.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

Appeal from District Court, Hopkins County; R. L. Porter, Judge.

Action by A. R. Horn against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

N. L. Lindsley, of Dallas, R. R. Neyland, of Greenville, and Geo. H. Fearons, of New York City, for appellant. R. D. Allen, of Sulphur Springs, for appellee.

HODGES, J. A. R. Horn, the appellee, sued the appellant for damages claimed as the result of an alleged delay in the transmission of the following telegram: "Mt. Vernon, Texas, May 16, 1910. Sam Smith. 1311 Grove Street, North Fort Worth, Texas. Bill Horn's baby died last night 10 :30. Come at once. J. W. Condrey." The petition alleged that the appellant, through its agent, contracted and agreed to deliver this telegram within a specified time, and failed to do so. It further charged negligence in the transmission and delivery of the telegram without reference to the special contract. Upon a trial before a jury, a verdict was rendered in favor of the appellee for $500. From that judgment this appeal is prosecuted.

The testimony shows that on the 15th day of May, 1910, at 10:30 p.,m., a child of the appellee died suddenly in the country a few miles from Mt. Vernon, Tex.; that the wife of Sam Smith, the addressee in the telegram, was the sister of Mrs. Horn, the mother of the child; and that the message was sent at the instance of Horn for the purpose of having Mrs. Smith present at the burial of the child on the next day. Condrey, whose name is signed to the telegram, and another neighbor went to Mt. Vernon for the purpose of sending the message, and arrived at that place some time after midnight. They went to the railway depot, where they found W. D. Knowles, the night agent of the railway company, in the office and on duty. It appears that at Mt. Vernon the appellant has no office exclusively for its own use, but its agent is permitted to occupy a portion of the office used by the railway company; that there were two instruments on a table in that office, one of which belonged to the appellant and was used by its agent in sending commercial messages, and the other by the railway agent in transacting the business of the railway company. The agent of the appellant was a man by the name of Black, and the office hours maintained at Mt. Vernon were from 8 a. m. to 6 p. m. At the time Condrey presented the telegram in question Black was not on duty, having retired for the night. The testimony is conflicting as to what was said in the conversation between Condrey and Knowles regarding the transmission of the message. Condrey testified that he inquired when the message could be sent, and was told by Knowles that it could be gotten off the next morning at 6 :30, and not later than 7 o'clock. He also says that Knowles agreed that he would transmit the message, and that it would be delivered in time to enable Mrs. Smith to leave Ft. Worth on the early train, which departed at 8 :45 a. m. This testimony is substantially corroborated by another witness. Knowles, who was called by the plaintiff, testified on cross-examination that he told Condrey he could not send the message; that he was not allowed to use the Western Union Telegraph Company's wires; that he did not make any terms with Condrey to send the message before 7 o'clock next morning; that he told Condrey the message would be sent as soon as the operator came down the next morning, or whenever he did come he would send it; that all he did was to take the money and message from Condrey and put it on file. He delivered the money to the operator some time during the succeeding day. The message was placed on the file by Knowles, where it was found the next morning by the day agent of the railway company, who testifies that he sent it as a matter of accommodation to Black, the appellant's agent, because Black had frequently assisted him in performing some of the details of his duties. It was also shown that Dallas was a relay station for messages originating at Mt. Vernon and destined to Ft. Worth; that, owing to that fact, it usually required about 50 minutes to get a message through from Mt. Vernon to Ft. Worth. Smith's residence was a half mile distant from the Ft. Worth office of the appellant, and two miles from the depot where Mrs. Smith would be required to go to take the train upon which she would have left. The message reached the Ft. Worth office at 8 :40, only five minutes before that train departed. It was sent immediately to Smith's residence; but, finding no one at home, the messenger returned with it to the appellant's office, and later found Smith at his place of business at the plant of the Armour Packing Company. The telegram was delivered to him at 10 :30 a. m. Smith testified that he left home that morning at 6 :45. The message was delivered too late for Mrs. Smith

to reach Mt. Vernon in time for the funeral. She did, however, leave later during the day, and visited her sister, Mrs. Horn, after the funeral.

The damages claimed in this suit are for the injuries which it is alleged resulted from the mental suffering endured by Mrs. Horn by reason of being deprived of the comfort and consolation which the presence of her sister would have given had the latter been notified in time to attend the burial of the child. Mrs. Smith testified that, had she received the message in time to have taken the early morning train from Ft. Worth, she would have gone to Mt. Vernon, and would have been with her sister upon that occasion.

It is contended by appellant that the damages claimed are too remote. This contention is predicated upon the assumption that mental suffering due to the failure of one sister to secure the comfort and consolation resulting from the society and presence of another on such an occasion cannot form the basis of a legal claim for damages. We are referred to the case of Telegraph Co. v. Birchfield, 14 Tex. Civ. App. 664, 38 S. W. 635. The facts of this case are somewhat different from those upon which the decision in the Birchfield Case was based, and we do not regard the rule there made as decisive of the question here involved. If mental anguish resulting from the loss of sympathetic companionship and the comforting presence of another upon occasions like this is to be recognized as an actionable injury, we see no reason why it should be made to depend upon the proximity of a consanguinous relationship, or that the parties should even sustain any such relationship, if the facts justify the conclusion that mental suffering would be the natural and proximate result of a failure to deliver the message within the time required by law or the contract of the parties. The extent of the mental anguish resulting in any case by being deprived of the presence and comfort of another may depend as much upon ties originating in former associations between congenial temperaments as upon those of blood or marriage. The existence of the cause of action in each case depends upon the particular facts disclosed. The degree of consanguinity is important chiefly as evidence of the existence of such endearing attachments and intimate relationship. The averments of the petition in this case as to the relations between Mrs. Horn and her sister, and the particular benefit the former expected to derive from the presence of the latter at the funeral, are somewhat vague and indefinite; and the facts proved upon the trial are still more unsatisfactory. While as against a demurrer general in its objections we should not feel justified in holding the petition defective, we are inclined to regard the facts relied upon for supporting the recovery as insufficient to sustain the judgment rendered.

[1] Appellant complains of the following portions of the court's charge: "(5) If you believe from all the evidence in this case that John Knowles was authorized by the defendant to receive telegraph messages at night at Mt. Vernon, Tex., to be transmitted by the day telegraph operator of the defendant at said place, and if you further believe that John Knowles in receiving the message in controversy contracted and agreed with J. W. Condrey to transmit said message to Sam Smith by 6:30 or 7 o'clock on the 16th day of May, 1910, in time for the sister of plaintiff's wife to arrive at the burial of the child of Bill Horn, as alleged in plaintiff's petition, and if you further find that the failure, if any, to transmit and deliver said message," etc. "(6) A telegraph company has a right to establish reasonable office hours within which to transact its business with the public, and the defendant has pleaded such office hours in this cause, but you are instructed that you will not consider the defense of office hours if you believe that John Knowles was authorized to receive telegrams at nighttime at said Mt. Vernon as charged you in paragraph 5 of this charge, and that said Knowles agreed to transmit the telegram in controversy by 6:30 or 7 o'clock." These charges assume as a matter of law that, if it were found that Knowles had authority from the appellant to receive a message under the circumstances he did, he also had the right to make a contract to transmit and deliver that message at a particular time, regardless of any existing rules with reference to office hours at the various points touched by the message in its route. The evidence conclusively shows that Knowles was not an employé of the appellant, and had no connection whatever with its service; that at the time this message was presented and received by him he was in the office of the railway company, in the performance of his duties as an employé of that company exclusively. Knowles in his testimony disclaimed any authority to act for the appellant. He says that he did not pretend to do so, but merely received the message and filed it where the operator could get it the next morning as an accommodation to the sender, who lived some distance in the country. The testimony did not warrant the submission of the issue of Knowles' agency; but, had it been otherwise, the court had no right to assume that an implied authority to receive and file a message after office hours carried with it the further power to make the special contract relied on in this suit and submitted in the charges quoted.

[2] Appellant was not responsible for the presence of Knowles in the office where its telegraphic instrument was kept; that was also the office of the railway company, and Knowles had a right to be there to serve his employer upon this particular occasion. After accepting it, Knowles says he hung

the message on the file in the office and retired for the night about 3 o'clock and did not give appellant's agent any notice regarding the purpose of the telegram. Hence, when the agent transmitted the message, appellant had no notice of the damages likely to result from a delay except that disclosed by the message itself. This was not sufficient to convey the information that Mrs. Horn would sustain any mental anguish resulting from the failure of her sister to be present at the funeral of the child. Unless the facts warranted a finding that Knowles had entered into a contract that would be binding upon the appellant to transmit and deliver the telegram in time for Mrs. Smith to leave Ft. Worth on the early morning train, there is no basis for any recovery in this suit under the issues submitted in the charges referred to.

The supplement to the transcript which appellant asked to have filed in this case is not considered as a part of the record.

Because of the errors discussed the judgment of the court is reversed, and the cause remanded.

### On Motion for Rehearing.

[3] In passing upon appellee's motion for a rehearing, it is perhaps proper that we detail more fully the pleadings and the facts with reference to the injuries relied upon for a recovery. The following are the material portions of the petition which relate to this feature of the litigation: "That immediately after the death of said child plaintiff sent his friends and agents, J. W. Condrey and W. D. Kounce, for the benefit of plaintiff and his wife (and for the said Sam Smith and his wife), to said Mt. Vernon, instructing them to send a telegram to Sam Smith, notifying him and his wife of such death, and to come at once." Then follow the message and other averments not material to be here considered. The petition continues: "That at the time of the delivery of said message the said agents of plaintiff informed the said agent of the defendant that the Sam Smith mentioned in the said message was the husband of the sister of Bill Horn's (plaintiff's) wife, and informed him that plaintiff's wife was the mother of the baby named in said telegram, and that Bill Horn was its father, and informed said defendant's agent that plaintiff's wife desired her said sister to be notified of the death of the child, and informed said agent that plaintiff's wife wanted and desired her said sister to be at the funeral and burial of said baby and to be with her, and informed said agent that she desired notice to be sent immediately of said death so that her said sister could come on the passenger train of the St. Louis Southwestern Railway Company of Texas, * * * in order to be at the funeral and burial of said child and to be with plaintiff's wife, and informed said agent that plaintiff's wife so desired." In another portion the petition says: "If said telegram had been delivered according to said contract, the sister of plaintiff's wife could have and would have boarded said train of said railroad at said time, and which said train did, in fact, leave said Ft. Worth at about said time, and could have and would have arrived at Saltillo on said line of railway and near the place of death and burial of said baby at about 2:30 p. m. of the same day, the said train of said road in fact arriving at Saltillo about that time, and said sister could have and would have been carried and transported from said Saltillo to the place of burial and funeral by private conveyance, which plaintiff then had in waiting for said sister for said purpose in time to have attended the funeral and burial of said baby, which would have been a great consolation, comfort, and satisfaction to plaintiff's wife, being deprived of which to her damage hereinafter stated." The petition then closes with the following averments: "That plaintiff's wife, by reason of the breach of said telegraphic contract and by reason of the negligence in failing to transmit and deliver promptly said telegraphic message as required by its duty under the law, was deprived of the immediate personal presence of her said sister at and after the funeral and burial of her little boy, deprived her of the present comfort, encouragement, assistance, consolation, satisfaction, sisterly and sacred communion and condolence of her said sister, which caused plaintiff's wife much grief of mind, independent of the loss of her child, great disappointment, discomfort, disconsolate, sad melancholy and repining, and suffered and now suffers great mental pain and anguish, and in reflection and memory will continue so to suffer in the future, to plaintiff's great damage in the sum of $1,750, which said damages was caused by a breach of said contract, and the proximate result of defendant's negligence, and plaintiff lost the charges paid on the transmission of the message." It will be observed that these averments do not disclose a situation different from that which ordinarily surrounds the mother upon the death of her child. There is nothing to indicate that she was not at the time attended by her husband and other relatives and friends who were able to provide all of the assistance necessary on such an occasion, and ready to render such comfort and sympathy as her condition made appropriate. The only purpose shown by the petition for which Mrs. Horn desired the presence of her sister was that she might receive from her the comfort and consolation to be expected from that particular relative. The testimony shows simply that Mrs. Horn and her sister had been reared in the same family, and were much attached to each other. The sister was married and lived with her husband in Ft. Worth, while Mrs. Horn resided with her husband and family near Mt. Vernon. Mrs.

Horn's testimony in the court below was very short. She merely said: "My name is Mrs. A. R. Horn. I am the wife of the plaintiff in this case. On the night of the 15th day of May, 1910, we lost our little baby boy. I desired my sister, who lived at Ft. Worth, to be at the funeral. She was not there." This is the case made by the pleadings and the evidence. The question is, do the facts disclose a right to recover? The only injury claimed is the loss of the comfort and relief ordinarily to be expected from the presence and companionship of a sister. None was proved except such as might be presumed from the mere fact that the sister was not there. Under the rules heretofore announced by the Supreme Court of this state, we do not think the appellee is entitled to recover. W. U. Tel. Co. v. Arnold, 96 Tex. 493, 73 S. W. 1043; W. U. Tel. Co. v. Luck, 91 Tex. 178, 41 S. W. 469, 66 Am. St. Rep. 869; Rowell v. Tel. Co., 75 Tex. 26, 12 S. W. 534; W. U. Tel. Co. v. Simmons, 93 S. W. 686.

The grief or mental anguish of Mrs. Horn on this occasion evidently was caused by the death of her child, not by anything resulting from the failure of the appellant to transmit and deliver the message. The only sequence which can be referred to as resulting from the failure to deliver the message according to the contract was the loss of the presence of a sympathetic relative who might to some extent have mitigated or relieved the distress of the sorrowing mother. The injuries, therefore, did not result from a situation affirmatively brought about by the telegraph company, but from its failure to perform a service which might have furnished some relief from a condition with which it otherwise had no connection. In other words, the suit is one for damages resulting from continued mental distress, and the injury is in the failure to supply the agency by which it might have been diminished. Had Mrs. Horn been alone at the time of the death of her child, or among strangers and in need of assistance in the performance of the services required upon such occasions, or had she been so situated that the absence of her sister from the funeral of the child could justly be said to be an active cause for additional mental anguish, the situation would be different. This case is distinguishable, we think, from that of W. U. Tel. Co. v. Simmons, supra. There the wife was alone with her children. One was sick, and the other dead. The husband was absent from home. She desired his presence and assistance, as well for the aid which he might render as for the comfort and companionship that would result therefrom. We know judicially that the ties between the husband and wife, and their relations toward their children, are such that when a child dies the absence of one of the parents from the fu-

neral is itself the active cause of grief to the other. The court in that case held that the mental anguish suffered by the wife by reason of not having her husband present at the funeral was a proper element of damage. It may be assumed, we think, that the mere fact that a husband is absent and the wife deprived of his aid and comfort on such an occasion would be in itself a sufficient basis for additional mental distress. As between sisters having separate families and living in widely separated cities, no such presumptions will be indulged. Whatever may be said as to the sufficiency of the pleadings in this case to authorize a recovery, it cannot, we think, be claimed that any of those special conditions were proved that would justify the judgment rendered. Mrs. Horn while upon the witness stand did not testify to any facts which would authorize the jury to infer that she suffered any fresh mental anguish by reason of the absence of her sister. She merely stated that she desired that her sister be present, but that she was absent.

The motion for a rehearing is overruled.