STANDARD LIFE AND ACCIDENT INSURANCE CO. v. LUCINDA TAYLOR.

No. 1008.

1.   Life Insurance Policy—Designation of Beneficiary—Mistake—Parol Evidence.

A life insurance policy designated the beneficiary by name as the daughter of the insured, and there was evidence that he had a daughter of that name at the time the policy was issued.   An action was brought upon the policy by the wife of the insured, bearing the same name as the daughter, and claiming that she

was intended as the beneficiary. Held, that in the absence of proof of fraud or mistake, parol evidence was inadmissible to show that the insured intended the wife as the beneficiary.

**2. Same—Engaging in More Hazardous Occupation.**

An insurance policy provided that if the insured while engaged in any occupation ·classed as more hazardous than that stated in his application, the insurance should be limited to such sum as the premiums paid would purchase at the rate fixed by the company for such increased hazard. The application and policy .stated the occupation of the insured as that of blacksmith, but the evidence showed · that at the date of the application and regularly thereafter the insured also acted .as switchman and car coupler, occupations classed as more hazardous than black-smithing, and that he was killed while coupling cars. Held, that the recovery should be limited according to the increased hazard.

**3. Same—Knowledge of Agent—Charge of Court.**

In an action upon an insurance policy wherein the occupation of the insured was ·classed as that of a blacksmith, the evidence showed that he was employed also as a car coupler, a more hazardous occupation, and that the company's agent knew at the time of the application for the.policy that he sometimes acted as a car repairer, a risk in the same class as blacksmithing, but it was not shown that the agent knew that he acted as car coupler. Held, that it was error to ·charge that if the agent knew that the insured "did other things than blacksmith-ing, and took his application as blacksmith", and the proof fails to show that there · was a willful intention on the part of the insured to conceal same from the agent," the amount of the recovery should not be limited according to the increased hazard stipulation in the policy.

APPEAL from Gregg.   Tried below before Hon. FELIX J. McCORD.

*DeGraffenried & Young*, for appellant insurance company.—1.   It was not necessary that Hugh Taylor should change occupations entirely, in order for the policy to be reduced, but, by the terms of the policy, if he was injured or killed while engaged in an exposure classed by the insurance company as more hazardous than the exposures incident to the occupation of blacksmith, the policy would be automatically re-·duced, and the insurance, in case of death, would be only for such sum .as the premium paid would purchase at the rate fixed by the company for such increased hazard.   Insurance Co. v. Martin, 133 Ind., 376; Aldrich v. Accident Association, 149 Mass., 457; 1 May on Ins., sec. 306, and authorities there cited.

2.   The court erred in charging the jury as follows: "If, how-·ever, the agent who insured the deceased knew that deceased did other things than that of blacksmithing, and took his application as black-·smith, and the proof fails to show that there was any wilful intention ·on the part of the deceased to conceal same from him, then this would not reduce the policy sued upon."   That said instruction is misleading ·in this, that it instructs the jury that if the agent knew at the time he took deceased's application that he did do other things, that it would not defeat or reduce the policy, regardless of whether or not said agent knew anything about deceased ever coupling cars.   Railway v. Martin, .81 Texas, 474; Fox v. Brady, 1 Texas Civ. App., 590; Smith v. .Bank, 1 Texas Civ. App., 115; Railway v. Shearer, 1 Texas Civ. App., 343.

*E. S. Terry*, for appellee.—1.   The deceased was insured as a black-·smith, which occupation was designated by his employer, and if he at

times did other duties more hazardous than was properly in the line of a blacksmith's trade or calling, they were simply individual hazardous acts, and not a more hazardous occupation or calling as contemplated by the policy. 2 May on Insurance, sec. 532, and authorities there cited; 23 Am. St. Rep., 664, 672; 8 Am. Rep., 218.

2. The deceased, when he bought the accident policy sued on, simply told the agent that he was employed as a blacksmith. He did not evade any questions propounded to him by the agent. That was his occupation at the time. Smith v. Banks, 1 Texas Civ. App., 115.

*R. B. Levy* and *N. A. Stedman*, for intervenor.—1. A contract in writing will not support a suit for recovery in favor of one not appearing as a party thereto, except in case of a mistake in the preparation of it, and a showing made that such person, though not named, was intended to be brought within its operation. and that the mistake was. mutual. Shirley v. Railway, 45 Texas, 377; 2 Pom. Eq. Jur., sec. 870; Bliss, Life Ins., sec. 174; May on Ins., sec. 566.

2. The fifth assignment of error of intervenor is as follows: The court erred in that portion of its charge wherein it instructed the jury as. follows: "It is for you to decide from the testimony for whose benefit Hugh Taylor intended the policy should be payable, whether the plaintiff or intervenor." The court should have itself construed the policy and not left it to the jury. Joey v. Williams, 78 Texas, 687; 2 Pars. on Con., 632; 2 Redfield on Wills, *430

WILLIAMS, ASSOCIATE JUSTICE.—The policy sued on was made payable in case of death of Hugh Taylor, the insured, to Lucinda Taylor,. whose relationship to the insured was stated both in the application and the policy to be that of daughter. Plaintiff, whose name is Lucinda, was at the date of the policy living with Hugh Taylor, and within a few months thereafter was regularly married to him. She claims that she was the beneficiary intended, and that the word daughter was written in the application and policy by mistake of the company's agent. Intervenor, who is the daughter of Hugh Taylor by a former connection. with another woman, claims that her name, also, is Lucinda Taylor, and that she is the beneficiary. There is a conflict of evidence as to the name of intervenor, plaintiff's evidence. tending to show that her name was Georgia Ann Taylor, and that she was never called or known by the name of Lucinda Taylor until the terms of the policy became known, after Taylor's death, when she assumed it for the purpose of claiming the money; while the evidence offered by intervenor tended to show that by her father she had been named and always called Lucinda. The court charged as follows:

"As to whether the policy was payable to Lucinda Taylor, the wife of Hugh Taylor, or to Lucinda Taylor, daughter, you should look to all the facts and circumstances surrounding the taking out of the policy, and the said Hugh Taylor's conduct since, to determine who he intended

the policy should be payable to." And again: "If Hugh Taylor really intended that the policy should enure to Lucinda Taylor, the plaintiff, the wife of him, then you will find for the plaintiff, notwithstanding the policy read payable to Lucinda, daughter."

The only evidence as to the circumstances immediately attending the issuance of the policy is that of the agent who issued it. He testifies unequivocally that Taylor stated the relationship as it was written in the application; that after the application had been written out, he distinctly read it, including the statement in question, to Taylor, and that the latter said it was right. There is evidence of some acts and declarations of Taylor, subsequent to the issuance of the policy, indicating an assumption or intent on his part that it was, or should be, payable to plaintiff. We are of the opinion that the charge was erroneous. If, at the time the policy was issued, there was a daughter of Taylor whose name was Lucinda, then there was no ambiguity in its terms, and no evidence of a mistake in the use of them, and hence the policy by its own terms would be payable to such a daughter. Bliss on Life Ins., secs. 317, 318.

We do not understand the law to be that parol evidence, in the absence of mistake, is admissible to change the effect of such instruments. When there is ambiguity in the designation of the beneficiary, parol evidence is admissible, as it is with reference to other documents, to explain the meaning and develop the doubtful intention by identifying the person intended. But where there is no ambiguity, the language of the paper itself must govern, and courts will not go outside the policy to ascertain an intention different from that clearly expressed by the terms used. Bacon on Benefit & Life Ins., sec. 263; Bliss on Life Ins., sec. 375; 2 Whart. Ev. sec. 1014, note, and authorities cited.

If it should appear that there was no daughter named Lucinda, then there would be an ambiguity in the language used which parol evidence must resolve. There was a person having an interest in Taylor's life going by the name used. There were also two daughters, neither of whom, in the case supposed, would answer to that name. It may be that in such case the name given would control the designation of the relationship, and, if not, evidence would certainly be admissible to identify the person intended. But, if there was a daughter having the name used, the intention of the insured must be ascertained from the language of the policy itself. Of course we are not now speaking of a case, not presented by the evidence, in which there is evidence to show such a mistake in the use of the language as would, upon other principles, authorize a correction of the instrument.

The error committed against the intervenor requires a reversal of the judgment. The defendant has also appealed.

The policy made the representations in the application a part of the contract so as to constitute them warranties, and insured Taylor against accident in the sum of $1500 as a blacksmith, grading his risk as of the medium class; and stipulated that "if the insured is injured in any

occupation or exposure classed by this company as more hazardous than that stated in said application, the insurance shall be only for such sum as the premiums paid will purchase at the rates fixed by said company for such increased hazard;" and further, that the company would not be liable if the insured was injured through "unnecessary exposure to danger."

The application for insurance contains the following statement: "My occupations, fully described, are as follows: Blacksmith. I am employed by Texas, S. V. & N. W. Ry. Co. I agree that my application shall be classed as medium. I understand and agree if I shall engage in any occupation or work rated by the company as more hazardous than the class herein agreed to, that my insurance shall be limited to the sum which the premium paid by me will purchase at the rate fixed by the company for such increased hazard."

Among the classes of risks of the company was one including "car couplers, switchmen, yardmen and yard brakemen," which occupations were treated as being, and were in fact, more hazardous than that of blacksmith, and in which the sum paid by Taylor would have procured insurance to the amount of $300.

The uncontradicted evidence shows that the duties of railway blacksmiths, generally, require them only to work with iron in the shops, and as clearly shows that at the time he took out his insurance and up to the time of his death, Hugh Taylor, while he was listed on the pay rolls of the company as blacksmith, was in fact, on the score of economy, also engaged in coupling and uncoupling cars about the yard. This was not done simply as an occasional and voluntary service, but he was expected and required under his employment to perform such services whenever occasion required. In fact, the duties of this character, according to the evidence, were a part of his employment, and he was as truly a car coupler as he was a blacksmith. He was killed while trying to uncouple cars.

A number of passages from the charge and the refusal of special charges on this feature of the case are assigned as error. A decision upon the following will suffice for a disposition of the case as it stands upon the present evidence.

The court charged as follows: "Now the court charges you that if deceased's occupation was that of a blacksmith, and if, after he insured, he quit that and went into a business or pursued another occupation more hazardous than that of blacksmith, and while pursuing such occupation was killed, then defendant would only be liable for the amount of insurance the premium would insure in such occupation, but the temporary doing of something other than that in the line of business he was generally engaged in would not in law be pursuing a different occupation.

"If deceased was employed as a blacksmith, and his duty was to repair cars, and he went out of the shop to bring a car in to repair it, and was run over and killed while exercising due care, this then would

not be a change of occupation, and would not reduce the amount of the policy below its face value.

"If deceased was employed as a blacksmith, and his employer occasionally called upon him to do other duties out of his line of employment, this would not be a change of occupation."

The following special charge was asked: "If you find that deceased, at the time of his death, was working in both the capacity of railroad blacksmith and a yard man, car coupler and switchman, and you further find that he was killed by accident in the last named capacity, then you will find for the party entitled to recover only for the sum of three hundred dollars."

It is unnecessary to inquire whether or not the instructions given by the court would be correct in a case to which they would properly apply. It is enough to say that there is nothing in the facts of this case to call for such distinctions as are sought to be made between occupation and occasional acts. It may be remarked, however, that even if otherwise applicable, the charge is incorrect in requiring, in order to induce the recovery not only that the insured should have engaged in a more hazardous occupation, but that he should have quit that of blacksmith. But, regardless of this, it was, as we have seen, a part of the regular employment of the deceased to do just such acts as that which he was doing when he was killed. When he stated that his occupation was that of blacksmith, he did not "fully describe" all of his occupations. And when he continued to couple and uncouple cars, he only continued to perform duties which his employment imposed upon him. Unquestionably, he was engaged, when killed, in an occupation classed as more hazardous than that mentioned in the policy, and, by the terms of the contract, his beneficiary was entitled only to the sum allowed for risks in that class. The special charge above set out should have been given, and, as it is more comprehensive than others requested, it is unnecessary to consider them in detail. Standard Life & Accident Ins. Co. v. Martin, 33 N. E. Rep., 105; Aldrich v. Mercantile Mutual Acc. Assn., 149 Mass., 457.

The fact that Taylor was killed on Sunday, and that he had not received previous orders to do the particular act he was then doing, cannot change the result. He was performing a service in the line of his employment.

The following instruction was also error: "If, however, the agent who insured the deceased knew that deceased did other things than that of blacksmithing, and took his application as blacksmith, and the proof fails to show that there was any wilful intention on the part of the deceased to conceal same from him, then this would not reduce the policy sued upon."

There was evidence that defendant's agent knew that deceased sometimes performed the work of a car repairer. That occupation belonged to the same class as blacksmithing. There was no evidence that the agent knew that deceased acted as car coupler, yardman or brakeman,

and certainly there was nothing in this state of the evidence to warrant the instruction given, even if it be conceded, which we are not prepared to do, that knowledge of the last named facts would avoid the effect of the provisions of such a contract of insurance as that in question.

The charge required that, in order to recover, the deceased must have exercised due care as stipulated, and hence the refusal of a special charge to the same effect was not error.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 13, 1896.