CONN v. ROSAMOND et al.

(Court of Civil Appeals of Texas. Galveston. Oct. 29, 1913. Rehearing Denied Nov. 27, 1913.)

1. APPEAL AND ERROR (§ 724*)—ASSIGNMENTS OF ERROR—STATUTES AND RULES OF COURT.

Courts of Civil Appeals Rule 24 (142 S. W. xii), requiring assignments of error to distinctly specify the grounds of error relied upon and set forth in the motion for new trial, and rule 25, requiring them to refer to that portion of the motion for new trial in which the error is complained of, are in conflict with Rev. Civ. St. 1911, art. 1612, as amended by Acts 33d Leg. c. 136, providing that an assignment of error which directs the attention of the court to the error complained of shall be sufficient; since an assignment may clearly direct the attention of the court thereto without reference to the motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022; Dec. Dig. § 724.*]

2. COURTS (§ 78*)—RULE OF COURT—EFFECT.

When a rule prescribed by the Supreme Court conflicts with the statute, the rule must yield.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 274, 276–281; Dec. Dig. § 78.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—STATUTES.

The rules requiring each assignment of error in a brief to be followed by a proposition and a sufficient statement from the record are not in conflict with Rev. Civ. St. 1911. art. 1612, as amended by Acts 33d Leg. c. 136, declaring an assignment directing the attention of the court to the error complained of to be sufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. LANDLORD AND TENANT (§ 55*)—TURPENTINE LEASE—CONSTRUCTION—SECURITY FOR BREACH—LIABILITY.

Under a turpentine lease whereby defendant agreed to pay the owner a specified sum for each tree destroyed, burned, etc., during the work, and under which $1,000 was deposited to secure the obligation, the amount of the security could not be regarded as a measure of the extent of the defendants' liability, when that was expressly fixed by the contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 136–150; Dec. Dig. § 55.*]

5. EVIDENCE (§ 448*)—PAROL EVIDENCE TO VARY WRITING.

Where there is no ambiguity in a written contract, parol evidence to explain its meaning is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 448.*].

6. TRIAL (§ 136*)—CONSTRUCTION—QUESTION FOR JURY.

Where there is no ambiguity in a written contract, it is the duty of the court to construe it and to instruct the jury what its legal effect is.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 318, 320, 321, 323–327; Dec. Dig. § 136.*]

7. CONTRACTS (§ 346*)—PAROL EVIDENCE—MISTAKE.

Under allegations of fraud or mutual mistake in the execution of a contract, evidence is admissible to show that it did not express the real agreement of the parties, and to show what the agreement in fact was.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1714, 1718–1751; Dec. Dig. § 346.*]

8. CONTRACTS (§ 342*)—PAROL EVIDENCE—ALLEGATION OF FRAUD.

In an action for the breach of a contract, defendant's allegation that he intended that a deposit for security should be the extent of his liability thereunder, and that, if the contract did not show that, it was a mistake or inadvertence of the parties, was not sufficient as an allegation of mutual mistake.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1196, 1716; Dec. Dig. § 342.*]

9. COMPROMISE AND SETTLEMENT (§ 23*)—ACTION FOR BREACH—SUFFICIENCY OF EVIDENCE—SETTLEMENT.

Evidence, in an action upon a turpentine contract, *held* not to sustain a finding that plaintiff accepted defendant's order for money in full settlement of damages for the breach.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 91–94; Dec. Dig. § 23.*]

10. CONTRACTS (§ 328*)—ACTION FOR BREACH—DEFENSE.

In an action upon a turpentine lease, alleging that defendant had extracted turpentine from timber on 118 acres of division No. 3, and that defendant failed to make plaintiff whole by deducting 118 acres out of division No. 2, it was a good defense that plaintiff represented that division No. 2 contained 258 acres and leased that amount to defendants, and that it was because the tract did not contain that amount that when defendants deducted 140 acres for themselves there was not 118 left for plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1819–1823; Dec. Dig. § 328.*]

Appeal from District Court, Jasper County; W. B. Powell, Judge.

Action by R. C. Conn against S. M. Rosamond and others. Judgment for plaintiff, and he appeals. Reversed and rendered for plaintiff.

Smith & Blackshear, of Jasper, and John B. Warren, of Houston, for appellant. E. A. McDowell, of Beaumont, and H. C. Howell, of Jasper, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellees S. M. Rosamond and S. S. Day, composing the firm of Rosamond & Day. The purpose of the suit was to recover damages for the loss of timber upon lands leased the defendants by plaintiff under a contract by the terms of which defendants, upon the payment of the consideration named in said contract, were granted the right to extract the turpentine and resin in the pine trees growing upon said land and agreed to pay plaintiff for all trees that were killed or died as a result of defendants' operations in extracting the turpentine therefrom within three years after such operations, and also to recover the sum

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

of $795 alleged to be due because of the operations by defendants upon 53 acres of said timber land for which they failed to pay plaintiff.

By the contract declared on plaintiff leased to defendants for "turpentine and resin purposes" all of the standing and growing pine timber on various tracts of land, which are fully described in the contract, and contained in the aggregate 1,863½ acres. By the terms of the contract the whode body of land was divided into four parts; each of said divisions being specifically designated and described. The portions of the contract upon the proper construction of which the issues between the parties must be determined are as follows:

"Art. II. Parties of the second part are hereby authorized to and they hereby agree to go upon division No. 1, above mentioned, on the first day of November, A. D. 1907, for the purpose of producing and manufacturing spirits of turpentine and resin from the pine trees of the dimensions hereinbefore set forth, upon payment to the party of the first part by parties of the second part the sum of $2,000.00, at Kirbyville, Texas, October 1, 1907, full payment of the said rights to division No. 1, and the further deposit of $1,000.00 by parties of the second part in the Kirbyville State Bank at Kirbyville, Texas, October 1, 1907, to protect the party of the first part from all loss or losses incurred by trees burning down, that might break off at boxes by force of winds, and trees that die within a period of three years from date of boxing and which are destroyed or damaged by fire.

"Art. III. Parties of the second part hereby covenant and agree to pay party of the first part fifty cents for every tree that is boxed for turpentining, measuring from 12 to 16 inches in diameter 18 inches from the ground, and $1.00 for all trees measuring 16 inches to 20 inches in diameter 18 inches from the ground, and $1.50 for all trees measuring 20 inches and upwards in diameter 18 inches from the ground, which blow down, die and is burned by reason of being boxed as aforesaid. But the title to the said timber, which dies or is blown down, shall remain in the party of the first part.

"Art. IV. Party of the first part hereby reserves the rights to rescind this lease with respect to divisions two, three, and four at the expiration of twelve months from November 1, 1907, in case as many as 3 per cent. of the cupping timber on Division No. 1 dies during said twelve months.

"Art. V. In case party of the first part rescinds the lease under the above article, then he is to pay to parties of the second part the remainder of the $1,000.00 deposited in said Kirbyville State Bank, less the damage by reason of the loss of timber on said land, together with 8 per cent. interest on the balance due them.

"Art. VI. Parties of the second part shall have the right at the expiration of twelve months from November 1, 1907, to rescind this contract of lease as to division 2, 3, and 4 hereinbefore mentioned. And in case of rescission of the contract by them party of the first part shall return to parties of the second part the sum of $1,000.00, less amount required to pay damages on timber aforesaid.

"Art. VII. In case this contract is not rescinded by either party, at the expiration of said twelve months, as above mentioned, then parties of the second part shall pay party of the first part the sum of $2,000.00 on the 1st day of November, A. D. 1908, and enter upon the said second division.

"Art. VIII. On October 1, A. D. 1909, parties of the second part shall pay party of the first part the sum of $2,000.00, and enter upon the third division, as above mentioned.

"Art. IX. On the first day of October, 1910, parties of the second part shall pay party of the first part the sum of $2,000.00 and enter upon the fourth division as aforesaid, for the purpose hereinbefore set forth.

"Art. X. Party of the first part on October 1, 1912, covenants and agrees to pay to parties of the second part the sum of $1,000.-00, less damages to timber which has been cupped on divisions 1, 2, 3, and 4. Said damages to be estimated according to stipulations set out in article 3, above mentioned.

"Art. XI. Parties of the second part covenants and agrees that they will pay to party of the first part damages as set forth in article 3, as long as they may operate under this contract."

This contract was executed on August 26, 1907.

In a supplemental contract executed by the parties on December 19, 1908, it is recited, in substance, that defendants had under their contract for extracting the turpentine from the timber on division No. 1 of said lands entered upon and extracted the turpentine from the timber upon 118 acres of division No. 3 in addition to the land contained in division No. 1, and it was agreed that in order to make the plaintiff whole the defendants would deduct from division No. 2, upon which they were then operating, 118 acres of land, and that same should become a part of division No. 3. This supplemental contract also contains the following provisions:

"Art. III. Party of the first part does hereby agree to pay party of the second part 8 per cent. interest on the $1,000.00 from date until this contract is canceled or closed. This $1,000.00 is placed in the Kirbyville State Bank of Kirbyville, Texas, to secure the party of the first part for dead timber, which is set forth in article 2 of the first contract.

"Art. IV. Party of the first part hereby reserves the right to rescind this lease with respect to divisions Nos. 3 and 4 on the 1st day of November, A. D. 1909, and party of the second part is to have the same right to

rescind or cancel their part of this contract."

Plaintiff alleges that as a result of the operations of defendants in extracting the turpentine from the timber so leased them by plaintiff 2,902 of the trees had died, that said trees would average from 16 to 20 inches in diameter, and that by the terms of said contract defendants were obligated and bound to pay plaintiff the sum of $1 for each of said trees, aggregating the sum of $2,902. It is further alleged that the defendants have paid and are entitled to a credit of $1,000, with interest from December 19, 1908, until the date of the filing of this suit. It is further alleged, in substance, that defendants had extracted the turpentine from the timber on 118 acres of division No. 3 described in said contract and for which they had paid plaintiff no consideration, and had failed to comply with the terms of said supplemental contract and make plaintiff whole by surveying 118 acres out of division No. 2 and leaving same as a part of division No. 3, but had extracted the turpentine from all of division No. 2 except 65 acres, having thus taken and operated upon 53 acres of land which they were not entitled to enter upon under the terms of their contract, to plaintiff's damage in the sum of $795. The petition prays for judgment for said sum of $795, with interest from October 1, 1909, and the further sum of $1,-822, with interest from January 1, 1909, which last amount is the value of the 2,902 trees lost by plaintiff as fixed by said contract, less the credit of $1,000, and interest set out in the petition.

The answer of the defendants, in addition to a general demurrer, numerous special exceptions the nature of which it is unnecessary to state, and a general denial, also contains special pleas in which it is averred, in substance, that from the terms of the contract sued on it appears that plaintiff is not entitled to recover any amount as damages for timber killed or lost as a result of defendants' operations under said contract in excess of the $1,000 deposited in the Kirbyville State Bank. They further pleaded: "That at the time of making these contracts they undertook by agreement to fix same within such limits as would protect the plaintiff from all losses that he sustained about the same time, and it was agreed then and there between all parties that said sum of $1,000 would be ample to protect and save harmless the said plaintiff from damage, and they then and there agreed that the said $1,000 should be the full measure of damages for which the defendants should be liable, in any event, the same if not included in the said article 2 as here pleaded, was, by mistake or inadvertence of the parties drawing the same, left out of and omitted from the terms of said contract, and these defendants say that they believed and understood said contract to so mean, and that the same was embodied therein as there pleaded, and, if they are mistaken in this, then they allege that they executed said contract under a mistake of fact, and that the same does not contain all of the agreements then and there entered into by these defendants, and, if they had known that it did not contain the said matters herein pleaded (if in fact it does not contain same), then they would not have signed same. * * * Defendants show unto the court that, after the expiration of three years from the date of the original contract sued on in this case, in accordance with the terms, considerations, and stipulations of said contract, all damages were settled by and between the parties hereto, in this: On or about the 1st day of October, 1910, or 1st day of November, 1910, defendant Rosamond gave to plaintiff an order in writing, directing him to take and apply to his own use and benefit the said $1,000 so deposited in the Kirbyville State Bank under article 2 of the contract and specified in said order that the same was in settlement of all losses by reason of damage to the timber, that plaintiff accepted and retained said order and applied said money to his own use, and made no objection thereto, and in no way ever stated any objection to same. That by accepting said order, and applying said money to said own use, plaintiff became bound by its terms, and all losses and damages arising under said contract were thereby settled."

In answer to plaintiff's claim for the $795 damages for extracting the turpentine from 53 acres of plaintiff's land upon which they had no right to enter under the terms of the original and supplemental contracts, they pleaded: "Defendants say: That their going out of division No. 1 and entering on division No. 3, and cupping 118 acres on division No. 3, was a mistake of fact by them, and, as soon as the same was discovered, the same was settled by agreement with the plaintiff, whereby these defendants were to set aside and survey for plaintiff 118 acres out of the southwest corner of the Elizabeth Davis survey of 1,280 acres. That said southwest corner is the sixth tract mentioned in said contract, and said to contain 259½ acres, and defendants say that plaintiff leased to them the said tract as containing 258½ acres, and which they believed to be in the same. That in pursuance of their agreement they proceeded to cut off from said 258½ acres what they believed to be 140 acres of land for themselves, but which in fact proved to be 130 acres, leaving the balance, 118 acres of land, in said tract for the plaintiff, and defendants say that, if said 118 acres were not left to plaintiff, it was his own fault in leasing to defendants said tract as containing 258½ acres when it did not contain that number of acres, and these defendants say that the said tract leased to them for 258½ acres by plaintiff contained only 218 acres, and plaintiff knew such fact at the time he leased same to defendants, but defendants did not so

know. That said shortage and failure to set aside to him 118 acres as agreed was caused by his own fault and wrong in the first place in leasing to defendants more land than he had in said tract, by which these defendants were misled, and now to allow him to recover thereon would be to allow him to take advantage of his own wrong."

The cause was submitted to a jury in the court below upon special issues, and the jury found that "the $1,000 placed in the Kirbyville State Bank under article No. 2 of the contract was intended by the parties to be all that the defendants should be liable for by reason of timber dying on said land from turpentining the same." They also found that plaintiff accepted an order given by the defendants on the Kirbyville State Bank for said $1,000 deposit in "full pay for all timber that died upon the land by reason of turpentining the same." They further found "that 2,902 trees had died upon the land by reason of having been turpentined prior to the filing of this suit, and that the average size of said trees was 18 inches in diameter." On the issue of the amount of deficiency in acreage in division No. 2, they found same to be 36½ acres, and that defendants operated upon all of said division except 64 acres. They made other findings which are not material. Upon the findings of the jury the court, after overruling a motion by plaintiff for judgment in his favor notwithstanding the verdict of the jury, and a motion by the defendants for judgment in their favor upon the verdict, rendered judgment in favor of plaintiff for the sum of $175.

[1] Appellees object to all of the assignments of error presented in appellant's brief and ask us to refuse to consider them because they violate the rules, in that they make no reference to the pages of the record and fail to refer to appellant's motion for a new trial.

Rule 24 for the Courts of Civil Appeals (142 S. W. xii) provides: "The assignment of error must distinctly specify the grounds of error relied on and distinctly set forth in the motion for a new trial * * * and a ground of error not distinctly set forth in a motion for a new trial * * * and not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived," etc. Rule 25 expressly provides that assignments of error "must refer to that portion of the motion for a new trial in which the error is complained of."

Only one of the assignments in appellant's brief refers to the motion for a new trial, and under the rules above quoted the remaining assignments would not require our consideration. We think, however, this requirement of the rules is in conflict with article 1612 of the Revised Statutes of 1911, as amended by the Thirty-Third Legislature (chapter 136, p. 276, Acts of the 33d Legislature), and for this reason cannot be enforced. As amended, the article cited provides that an assignment of error "shall be sufficient which directs the attention of the court to the error complained of." An assignment may clearly and unmistakably direct the attention of the court to the error complained of without referring to a motion for a new trial, and therefore the requirement of the rule that to be sufficient the assignment must refer to the motion for a new trial conflicts with the provision of the statute that "an assignment shall be sufficient which directs the attention of the court to the error complained of."

[2] It is clear that when a rule prescribed by the Supreme Court conflicts with the statute the former must yield. This has been expressly decided by our Supreme Court in the case of Ry. Co. v. Beasley, 155 S. W. 183.

The assignments in appellant's brief are sufficient, under the statute above cited, to require us to consider them, and appellees' objection to their consideration cannot be sustained.

[3] We do not intend to hold that the rules governing briefs which require that each assignment presented in a brief must be followed by a proposition and sufficient statement from the record conflict with the statute cited. The objection to the assignments in this case presents no such question. Neither the propositions nor the statements from the record submitted under the assignments are objected to, and only the sufficiency of the assignment itself is questioned. The statute cited deals only with the sufficiency of assignments and has no reference nor application to the manner in which assignments should be presented in briefs. The decisions cited by appellees in support of their contention were rendered before the statute before mentioned became a law, and our holding is not in conflict with those decisions.

Under appropriate assignments of error, the appellant complains of the ruling of the court in permitting defendants to introduce evidence to explain the contract sued on and in submitting to the jury the question of whether it was the intention of the parties to the contract that the $1,000 deposit should be all that plaintiff could recover for the loss of timber as a result of defendants' operations under said contract, on the ground that the contract is unambiguous and therefore evidence to explain it was not admissible, but the court should have construed it and have instructed the jury that defendants were bound thereby to pay plaintiff the amount specified in the contract for each tree lost by plaintiff as a result of defendants' operations upon said land.

[4] We think these assignments should be sustained. The contract, in so far as the measure of appellees' liability for the value of trees destroyed as a result of their operations under the contract, seems to us to be free from ambiguity. In article 3 they ex-

pressly agree to pay plaintiff a specified sum for each tree so destroyed, and in article 11 they reaffirm their obligation to pay plaintiff the damages contemplated and specified in article 3. When article 2 is considered with the other provisions of the contract, especially with the recital in article 3 of the supplemental contract, it is clear that the $1,000 deposited in the Kirbyville State Bank was placed there to secure the obligations of appellees evidenced by articles 3 and 11 of the contract above set out. From the face of the contract it is evident that the $1,000 deposit was made for the purpose of securing the obligations of appellees, and the written agreement considered as a whole clearly negatives the idea that the $1,000 was intended by the parties to be the measure of the extent of the damages for which appellees should become liable.

[5, 6] The amount or value of the security required by a contract to insure the performance of its obligations cannot be regarded as a measure of the extent of liability of the obligor in the contract when the extent of such liability is fixed by the express terms of the contract. There being no ambiguity in the contract, no evidence as to its meaning was admissible; but it was the duty of the court to construe it and instruct the jury what its legal effect was. San Antonio v. Lewis, 9 Tex. 69; Tinsley v. Penniman, 12 Tex. Civ. App. 591, 34 S. W. 365; Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087.

[7, 8] Of course, under allegations of fraud or mutual mistake it would have been permissible for appellees to have shown that the written contract did not express the real agreement between the parties and to have shown what the agreement in fact was; but no such allegations or proof were made. There is no allegation of fraud, and the only allegation of mistake is that the appellees intended that the $1,000 deposit should be the extent of their liability, and that if the contract does not show this it was a mistake or inadvertence "of the parties drawing the same." This is not an allegation of mutual mistake of the parties to the contract, but, if it could be so construed, there is no evidence to sustain such an allegation. The evidence only shows that appellees did not intend to obligate themselves to become liable for damages in excess of the $1,000. There is no evidence that plaintiff at any time agreed that appellees' obligations should be so restricted. All that the evidence shows upon this issue is that both parties considered that the damages would not likely exceed $1,000, and therefore that a deposit of that sum would be sufficient to secure the performance of the contract by the appellees, and there is not a particle of evidence tending to show that plaintiff ever agreed that appellees should not be liable under their contract for any damages in excess of the amount of the security required by him for its performance. If appellees' contention that the pleading and evidence in this case authorized the introduction of evidence explanatory of the contract and the submission to the jury of the question of whether appellees were liable under the contract for any sum in excess of $1,000 should be sustained, the sanctity of written contracts would be destroyed, and the rule which forbids such contracts to be varied by parol evidence repudiated or ignored.

[9] Appellant complained in the trial court of the finding of the jury that he accepted "an order for the $1,000 drawn by the defendants on the Kirbyville State Bank in full pay for all timber that died upon the land by reason of turpentining the same," and by assignment presented in the brief assails said finding on the ground that it is without any support in the evidence. This assignment must be sustained. The order on the bank for the payment of the $1,000 as it appears in the statement of facts is as follows: "October 1, 1910. Kirbyville State Bank pay to R. C. Conn $1,000.00 one thousand dollars deposited by Day & Rosamond complying with articles 2 and 3 timber contract between Conn, Rosamond & Day. Sam Rosamond." Before this order was produced and offered in evidence, the defendant Rosamond testified that his recollection was that it contained a recital that the $1,000 was paid as settlement in full of appellant's claim for damages under the articles of the contract before mentioned. When, however, the order was produced and he was asked if that was the order given by him, he admitted that it was, but testified that he did not think the figures "2 and 3" shown in said order were written therein by him. He did not question the genuineness of the order in any other respect. This evidence does not raise an issue as to whether the order contained a recital that it was given as payment in full of plaintiff's claim, and there is no evidence that plaintiff at any time agreed to accept the $1,000 as payment in full of the damages claimed by him by reason of timber lost as a result of defendants' operations on his land.

[10] Appellant further complains of the judgment of the court below in not awarding him the damages claimed by him for the 53 acres of land upon which defendants entered and extracted turpentine from the pine trees thereon without paying plaintiff any consideration therefor. We think the answer of defendants to this portion of plaintiff's petition showed a good defense, and said answer was sustained by the evidence, except as to 17½ acres of said land. It is admitted by the parties that the $175 awarded plaintiff by the judgment was for damages to this 17½ acres, which the evidence shows amounted to $10 per acre, and appellees made no complaint of the judgment in favor of appellant for this amount.

From what we have said it follows that appellant, in addition to the said sum of

$175, was entitled to judgment for the 2,902 trees that died as a result of the operations of defendants, which damage by the terms of the contract is fixed at $1 per tree; the jury having found that said trees were of the average diameter of 18 inches. From this sum it is admitted that the $1,000 with 8 per cent. interest for one year, aggregating the sum of $1,080, should be deducted, leaving the balance of such damages $1,822. Adding this sum to the $175, we have the sum of $1,997 for which judgment should have been rendered for appellant with interest from January 1, 1912, the date of the accrual of such damages at 6 per cent. per annum.

There being no ambiguity in the contract sued on, and the findings of the jury by which the amount of appellant's damages is fixed being unassailed, it follows that the judgment of the court below should be reversed, and judgment here rendered for appellant for the sum last stated, and it has been so ordered.

Reversed and rendered.