## WESTERN UNION TELEGRAPH COMPANY v. R. J. STILES

### No. 389.—Decided March 3, 1896.

**Damages for Delay of Telegram—Evidence.**

In a suit against a telegraph company for negligent delay in delivering a telegram summoning plaintiff to the deathbed of her brother, in order to show the extent of grief caused to plaintiff, evidence was admitted, over defendant's objection, that deceased had spoken of his desire to see her and disappointment at her delay, and said she was too rich and proud to care for him, and died in that belief, and that this was communicated to plaintiff on her arrival between his death and burial. Held:

(1) The testimony did not tend to prove the state of plaintiff's feelings towards her brother; nor to prove any result of the failure to deliver the message for which the telegraph company was liable. The defendant could not be expected to have anticipated such results. (P. 314.)

(2) The telegraph company can only be held for such consequences as it should have anticipated, from the knowledge that it had and that which the law imputes to it, as the probable result of a failure to deliver the message. (P. 315.)

QUESTIONS CERTIFIED by the Court of Civil Appeals for First District, in an appeal from DeWitt County.

*Walton & Hill,* for appellant.—We think the principles laid down in Tel. Co. v. Kirkpatrick, 76 Texas, 217; Tel. Co. v. Moore, 76 Texas, 66, and reiterated and amplified in Tel. Co. v. Carter, 85 Texas, 586, and Tel. Co. v. Linn, 87 Texas, 7, afford the full basis for answer to the question certified.

"The Telegraph Company is chargeable with notice of relationship that exists, if any, between all parties named in the message and with notice of such purposes as may be reasonably inferred from the language used, in connection with the subject of the communication." (Carter case, 85 Texas, 580.)

An extraordinary result of non-delivery of the message in the Carter case was burial in a wrong place and consequent exhumation and anguish on account of manner and place of burial. These were held not action-

able, for: "How could it be said that the burial in an unsatisfactory place, or in clothing unsuitable, were the probable results of the failure to deliver the message, or that such a thing could be, or was, contemplated by the parties as a consequence of such failure." We venture to ask, "How can it be said that the facts that the sick brother would 'speak bitterly' of his sister, and reproach her as considering herself above him, and as too rich and proud to care for him" were the probable results of a failure to deliver the message, "or that such a thing could be, or was, contemplated by the parties as a consequence of such a failure?"

The parties must not only to be deemed to have contemplated this extraordinary result, but also that it (state of mind of deceased and his declarations) would be communicated to the sister, and next the effect of this communication on the sister. Conceding that this effect is natural and within reasonable contemplation, we submit that the first two links in the chain of causality are clearly not such as the law will deem to have been in contemplation.

"To maintain an action for special damages, they must appear to be legal and natural consequences, arising from the tort, and not from the wrongful act of a third person remotely induced thereby."

The "injurious result * * * must be such as might be anticipated as a probable consequence" of "the breach of the contract." The party * * * who fails to perform a contract is not liable for the act of a third person which is not the natural result of such breach of contract." (Tel. Co. v. Linn.)

The decision of the Linn case also holds that results depending on the will or decision of third parties or which will involve uncertain and contingent link in the chain of casuality by which the result is reached, are too remote. It also holds the contingency of a postponement of a funeral, beyond the usual and ordinary time, to be too remote and not deemed within the contemplation of parties. The case of Ikard v. Tel. Co., 22 S. W. Rep., 534, decides the same as to the extraordinary results of burial before contemplated time. In Tel. Co. v. Smith, 26 S. W. Rep., 216, there was a message from one brother to another informing him of their father's death and asking, "have you any wishes in regard to funeral," it was held that the desire of plaintiff to have his father's remains embalmed and carried to New Orleans could not have been reasonably contemplated, and its failure was a result too remote to form basis of recovery.

In Tel. Co. v. Hale, 32 S. W. Rep., 814, admissibility of evidence of desire and disappointment of sick person to have plaintiff come, etc., and repetition of this to plaintiff on his arrival after the sick person's death does not arise. Only question is as to whether or not plaintiff (addressee) was a beneficiary.

*Geo. H. Fearons,* also for Western Union Telegraph Co., appellant.

*Price & Green,* for appellee, cited: Tel. Co. v. Evans, 1 Texas Civ.

App., 297; Tel. Co. v. Lydon, 82 Texas, 366; Tel. Co. v. Hale, 32 S. W.. Rep., 814.

BROWN, ASSOCIATE JUSTICE.—The following statement and question have been certified to this court by the Court of Civil Appeals of the First Supreme Judicial District:

"In this case plaintiff sues to recover damages for grief suffered by her in consequence of the negligent failure of defendant to deliver in proper time a telegram from her sick brother, notifying her of his serious sickness and requesting her to go to him, on account of which default on defendant's part, plaintiff was deprived of the opportunity of getting to her brother before his death.

"The dispatch was sent several days before the brother's death and should have been delivered on the day when it was sent, but was not in fact delivered until after his death.

"In order to show the extent of her grief resulting from these facts, plaintiff alleged and proved that after sufficient time had elapsed for the delivery of the telegram and for her to have reached him, her brother expressed strong desire to see her, and disappointment at her failure to come, and also spoke bitterly of her, remarking that she considered herself above him and was too rich and proud to care for him, and that he died with that belief. All of this was communicated to plaintiff on her arrival between his death and burial, and aggravated and intensified the grief which she suffered.

"Were these facts admissible and could plaintiff, if otherwise entitled to recover, hold defendant liable for the increased grief occasioned by them?"

The testimony set out in the statement above copied was not admissible, because it did not tend to prove the state of the plaintiff's feelings towards her brother, nor did it tend to prove any result of the failure to deliver the message for which the Telegraph Company was liable.. The Telegraph Company could not be expected to anticipate that upon the failure of the plaintiff to respond to the message sent by her brother summoning her to his bed-side, the brother, in the presence of death,. would become embittered against her and attribute it to her pride and want of affection for him.

The evidence in question, taken as a whole, tends more to prove (so. far as the deceased was concerned) that there had existed on his part some unkind feeling towards his sister, than it does to prove any affectionate regard for her, and therefore it did not in any way tend to establish, what was no doubt true, that the sister was affectionate towards her brother.

The recital of the statements of the dying man, made by others to the plaintiff after her arrival, naturally aggravated the grief which would have occurred to a kind and loving sister under ordinary circumstances;. the admission of such testimony would awaken in the jury a sympathy for the distressed sister, and, although it might be unconsciously done,.

would induce them to increase the amount of damages. If the evidence is not to influence the verdict, why should it be admitted at all? A juror has the right and it is his duty to consider all evidence admitted by the court. But the Telegraph Company cannot be held liable for all damages which may arise from a failure to comply with its contract, no matter how great or real such damage may be; it can only be held for such as it should have anticipated, from the knowledge that it had and that which the law imputes to it, as the probable result of a failure to deliver the message. (Tel. Co. v. Carter, 85 Texas, 580.)

The case of Tel. Co. v. Lydon, 82 Texas, 364, is urged as supporting the ruling of the district court in admitting this testimony. An examination of that case will show that the question was not before the court, the evidence not having been objected to, and what the learned judge who delivered the opinion said was unnecessary to the decision of the case. In the opinion, he said: "While juries, in the absence of any evidence on the subject, may act upon their own knowledge of the affection subsisting between a mother and her son, still the admission of evidence upon the subject may be proper, and we cannot say that proof of a special regard felt and shown by a mother for one of her children may not be properly considered by the jury, in connection with other circumstances, in estimating the feeling of the child toward the parent." The opinion expressed by Judge Henry in this opinion is based distinctly upon the proposition that the proof offered, together with other circumstances, might be considered as tending to show the condition of the feelings of the child towards the mother. But no one could claim that the evidence admitted in this case would tend to prove any such thing on the part of the plaintiff, for it distinctly imputes to her an unworthy and unnatural condition of mind towards the deceased, and is inconsistent with the idea that the brother regarded her as affectionate towards him. If Telegraph Company v. Lydon be regarded as correctly stating the law it does not authorize the admission of this evidence. A really loving sister would be greatly grieved to know of such a state of feeling on the part of her brother at such a time; the more unjust the imputation the greater would be her mental suffering. In charity to the deceased it would be presumed that his unkind feelings and harsh expression were the result of a morbid sensitiveness, which could not be expected to arise under the circumstances.

We answer that the testimony should not have been admitted and that the Telegraph Company cannot be held liable for the increased grief occasioned by the relation to her of the statements made by her dying brother.