WESTERN UNION TELEGRAPH COMPANY v. D. J. YOUNG.

Decided May 21, 1910.

**1.—Telegraph Company—Delay in Delivering Message—No Cause of Action, When.**

When it is not made to appear that but for the negligent delay of a telegraph company in delivering a message, the addressee could and would have reached his home sooner than he did and so have sooner comforted and consoled his sick wife and have attended the funeral of a new born infant, no cause of action for damages for mental anguish suffered either by the wife or the husband is established against the company.

**2.—Same—Speculative Damages.**

A third party telegraphed an absent husband that his, the addressee's, wife was sick and his infant dead; the husband replied to the same party that he would be home that night, and requested him to see that his wife have

every attention; this reply was not delivered by the telegraph company until after the husband had arrived at home; there was no evidence that the wife did not have every attention. Held, the husband was not entitled to recover from the telegraph company damages for the increased suffering of the wife because she was not notified of the time when he would return home. Such damages are too uncertain, speculative and conjectural.

Appeal from the District Court of Hemphill County. Tried below before Hon. F. P. Greever.

*Hoover & Taylor, H. A. Allen,* and *N. L. Lindsley, (Geo. H. Fearons* of counsel), for appellant.

*B. M. Baker,* and *Willis & Willis,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellee, D. J. Young, against the appellant, the Western Union Telegraph Company, for damages because of negligent delay and non-delivery of certain telegrams sent from Canadian, Texas, on September 28, 1908, to himself at Amarillo, Texas, the first message reading: "Mama sick, come home. John Young;" the second message reading: "Mrs. Young is sick; child dead. Joe Allen;" and a reply message hereinafter set forth.

It was alleged in substance that on September 27, 1908, the plaintiff, who resided with his wife and children at Canadian, Texas, was required to go, and did go to the City of Amarillo, about one hundred miles distant; that about eleven o'clock p. m. September 27, 1908, plaintiff's wife became sick and between four and five o'clock on the morning of September 28th, gave premature birth to a child, which was delivered dead; that between four and five o'clock on the morning of September 28th, plaintiff's son, John Young, at the instance of the plaintiff's wife, delivered to the defendant's agent at Canadian, Texas, the message first above mentioned for immediate transmission and delivery to plaintiff, but that the same was never delivered; that plaintiff's family, having received no reply to the first message as expected, the second message was delivered to the defendant company for transmission and delivery to the plaintiff, at about eight o'clock a. m. of said September 28, 1908; that the message last mentioned was not delivered to the plaintiff until about two o'clock p. m. on September 28, 1908, when he found it at the Amarillo Hotel, where it had been left by the defendant's employee; that about two-thirty o'clock p. m. of said day, plaintiff delivered to defendant's agent at Amarillo, Texas, a message addressed to J. W. Allen at Canadian, Texas, reading: "Will be home tonight; see that Mrs. Young has every attention." That the defendant's agent accepted and agreed to transmit and deliver said message to Allen, but that the same was not delivered to Allen until about eight o'clock on the morning of September 29th, after plaintiff's arrival home on the night of September 28th. It was further alleged that defendant had been paid the customary fees for the transmission and delivery of the message quoted, and that the failure to promptly deliver the same was due to defendant's

negligence; that his purpose in sending the message to Allen was for the comfort of his wife and would have been sent earlier, had he earlier known of such sickness; that it was necessary to bury plaintiff's child on September 28th, which was done before his arrival at home; that Canadian is about four hours ride from Amarillo; that had the telegram first quoted, sent by his son, been delivered to him as it should have been, he would have received the same in Amarillo in time to leave said place at seven o'clock a. m. and have arrived at Canadian at eleven o'clock a. m. on the same day, in time to have attended the funeral of the child and to have comforted his sick wife; that he in fact, took the earliest train after having received the Allen message, which left Amarillo about five p. m. on September 28th, and arrived at Canadian about eight-forty p. m.; that he had expected an answer to his telegram to Allen, and that he suffered great distress because he heard nothing further from his wife after the receipt of the Allen telegram, until he reached home; that because of the failure to receive the telegram sent by plaintiff to Allen, his wife suffered great anxiety and mental distress, for all of which damages were sought in the sum of one thousand, nine hundred and seventy-five dollars.

Defendant answered by general demurrer and numerous special exceptions, all of which, in various forms, attacked the petition of the plaintiff on the ground that the damages claimed were too remote and not such as were in the contemplation of the parties. Defendant also presented a general denial, and answered specially that "on the 27th and 28th days of September, 1908, and for many days prior and subsequent thereto, it did not maintain a night office in Amarillo, Texas, and that at said time the regular closing hour, and the hour said office was closed on the night of September 27th, was ten o'clock p. m., and that the regular time for opening said office, and the hour said office was opened on the morning of September 28, 1908, was seven o'clock a. m.; that the said hours so fixed are reasonable and ordinary and the defendant had the right to fix such hours. That the defendant did not at said dates, or either of them, receive or transmit any messages at said office after ten o'clock p. m. and before seven o'clock a. m.; that if the said message delivered to this defendant at Canadian, Texas, on the morning of September 28, 1908, by plaintiff's son, John Young, had been transmitted to the said office at Amarillo, Texas, immediately or before seven o'clock a. m., that the same could, and would not have been received before seven o'clock a. m. on the said morning, and could not have been delivered before seven-thirty o'clock a. m.

The defendant's demurrers were overruled, and the trial, which was had before a jury, resulted in a verdict and judgment in favor of plaintiff for damages to his wife for fifteen hundred dollars, and in favor of the plaintiff for damages to himself, for two hundred dollars and twenty-five cents, from which judgment this appeal has been perfected.

In submitting the issues, the court, by his charge, excluded a consideration of the questions presented by the plaintiff's petition

arising out of the defendant's failure to deliver the telegram by the plaintiff's son, John Young, and of the failure of Allen to answer plaintiff's telegram to him on September 28th, and thus relieve him of anxiety and distress of mind occasioned thereby. These instructions were probably predicated upon the full proof of defendant's office hours as alleged, and upon the failure of the telegram to Allen on its face to give notice of any expected reply. At any rate, appellee presents no exception to this action of the court, so that we are only required to pass upon questions pertinent to the issues submitted, which were, first, plaintiff's right to recover in his own behalf for the mental distress occasioned by appellant's failure to earlier deliver the telegram from Allen to plaintiff; and, second, plaintiff's right to recover for the mental and physical suffering occasioned his wife, because of the failure to earlier deliver the telegram from plaintiff to Allen.

By exceptions to the plaintiff's petition, by request for peremptory instruction refused, and in various other forms appellant insists that under the facts alleged and proven, appellee was not entitled to recover. That there were breaches of the contract and negligence on appellant's part in the failure to earlier deliver the telegram sent by Allen to the plaintiff at Amarillo, and the telegram from the plaintiff at Amarillo to Allen at Canadian, seems to be thoroughly established, but the proof also seems undisputed that had the Allen telegram to plaintiff been promptly transmitted and delivered after its receipt at the Canadian office on the morning of September 28th, plaintiff would not, and could not, have arrived at home earlier than he did on the night of the same day, because of the fact no other train left Amarillo for Canadian earlier than the one plaintiff took. At least, if there was any other train or any other mode of conveyance of which appellee could and would have availed himself, it is not mentioned by him, nor made to appear in the testimony; so that the failure to earlier deliver the Allen message to appellee, did not, as a consequence, deprive him of the comfort and consolation of attending his child's funeral, or of consoling his wife in her sickness. We know of no case which will support a verdict for damages for mental anguish under such circumstances.

Nor do we know of any case that, under the circumstances, will support the verdict in appellee's favor for the damages occasioned his wife. The case in our own courts perhaps most nearly sustaining the verdict and judgment for damages to appellee's wife, is that of the Western Union Telegraph Company v. Burrow, 10 Texas Civ. App., 122, by this court. In that case, the husband was permitted to recover for the increased mental and physical suffering of the wife, caused by delay in the arrival of her husband, occasioned by the negligent failure of the telegraph company to deliver to the husband at a distant point, a telegram informing him of his wife's serious sickness. In that case, however, had the telegram been promptly delivered, the husband could and would have reached his wife in time to have aided and given comfort to her, in the hour of her greatest need. The uncontroverted facts as presented to us,

seem otherwise in the case now under consideration. No diligence in delivery of the telegram sent by Allen would have enabled appellee's wife to secure the presence of her husband at her bedside earlier than was done. His absence, as there is testimony tending to show, occasioned her both mental and physical suffering, but such absence was in no wise brought about or continued by any act or omission on the part of appellant, or of its servants or employees.

The only possible hypothesis upon which the verdict and judgment for the wife's damages can rest, is for her increased suffering because of the failure to receive reply from appellee, stating the time when he would return, but for this, we think there can be no recovery. Appellee did not direct his return message to his wife, but to Allen. On its face it did not direct Allen to communicate its contents to the wife. On the contrary, the reply directed Allen to "see that Mrs. Young has every attention," and, by the testimony of the attending physician, the attending trained nurse, and others, it is undisputed that Mrs. Young in fact, received every attention. Allen testified, among other things: "I could not say what attention Mrs. Young would have gotten that she did not get had I received the telegram from Mr. Young. I suppose that she got all the attention that it was possible to give her. I do not know of anything that she could have received that she did not receive, had the telegram been delivered to me, except that she would have received word from her husband that he would be at home that night; I can't think of anything in the way of medical attention that she would have gotten that she did not get, had that message been delivered." Mrs. Hayes, the trained nurse, testified among other things: "I am a graduate of St. Luke's Hospital for Nurses in San Francisco, Calif........ I think it would be impossible for anyone to say how long Mrs. Young's illness was prolonged by reason of not getting the telegram from her husband...... In so far as I was able to give her attention, she was not neglected in any way. Had Mr. Allen received the telegram from Mr. Young, I think of no attention that could have been given her that was not given her, except that her mind would have been relieved. So far as I was concerned, she was not neglected. The doctors did not fail to give her that attention that she ought to have. I do not know of any treatment they would have given Mrs. Young that they did not give her, had the telegram from Mr. Young been received by Mr. Allen. I do not know of any attention that any doctor or anyone else, could have given her that was not given her, had that message been delivered to Mr. Allen on that day." Dr. E. F. Hamm, the attending physician, testified, among other things: "I am a graduated physician. I am familiar with the mental state of a person and how that mental state will worry and affect their physical state. Mrs. Young was worried about not having heard from Mr. Young, and worry in any person impairs the general condition and the secretions of the body. . . . The difference I saw in Mrs. Young's condition and in the condition of other cases of that kind that I had attended was, that she did not take the rest that is usual in such cases. . . . I do not think I could say how much longer her illness was prolonged by reason of the fact of her not hearing that Mr. Young was coming

home, than if she had heard earlier that morning; I could not say whether or not, it prolonged her illness; but it is possible that it did. . . . It is, of course, just a possibility. . . . I do not know of any medical attention that Mrs. Young needed on the 28th of September, 1908, that she did not get. If Mr. Allen had come to me on the 28th of September, 1908, and told me that he wanted Mrs. Young to have every attention possible, I do not know of anything else I could have done that was not done. I gave her every attention that I could. I do not know of any attention that she did not get by reason of that telegram's not having been received. I do not know of any way that she was neglected by reason of the fact of Mr. Allen's not having notified me that Mr. Young wanted her to have every attention possible." Appellee, D. J. Young, himself testified, among other things: "I do not know of any attention that my wife did not receive that she would have received, had the telegram been delivered promptly. I do not know of any medical attention that she would have received that she did not receive, had this telegram I sent to Mr. Allen been delivered to him. So far as I know, she received every attention possible."

As stated, therefore, the verdict and judgment for damages must rest alone on the testimony establishing negligence on appellant's part, and that tending to show at most a mere increase and prolongation of mental distress on the part of appellee and his wife, because of the failure to promptly deliver the telegrams and consequent possible deterrent effect in the recovery of the wife, which the testimony shows took place in about the usual time of such cases. The pecuniary damages arising under such circumstances must, in the nature of things, be highly uncertain, speculative, and conjectural, and therefore, cannot be allowed without conflict with the principle decided by our Supreme Court in a number of cases. In Rowell v. Western U. Tel. Co., 75 Texas, 26, it was held that mere continued anxiety caused by the failure to promptly deliver a message was not an element of damage, the court saying: "Some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of contract in most cases, but the cases are rare in which such emotion can be held an element of the damages resulting from the breach. For injury to the feelings in such case, the courts cannot give redress. Any other rule would result in intolerable litigation." The Rowell case was quoted with approval in the latter case of Western U. Tel. Co. v. Giffin, 93 Texas, 530, where it was held that the telegraph company was not liable in damages for causing the anxiety of a husband for the welfare of his sick wife and child to be protracted for twenty-four hours, through its failure to deliver a message sent by the husband to relatives notifying them of his coming. The case of Johnson v. Western U. Tel. Co., 14 Texas Civ. App., 536, by the Court of Civil Appeals for the Fifth District, was one in which the plaintiff Johnson alleged in substance, that his wife wired him to return home, as her mother there was expected to die; that he answered that he had started and would reach home on the night of the next day; that his message was not delivered to the wife until after he reached home, and he sought to recover for the mental anguish suffered by the wife because

of not hearing from him, alleging that such anguish "was wholly separate and distinct from the grief caused by her mother's condition." The court in an opinion by Chief Justice Lightfoot, held that the petition was subject to a general demurrer, and our Supreme Court refused a writ of error in the case. These cases seem closely in point here, and we see no way to distinguish the case we now have before us from them.

We therefore conclude that the judgment must be reversed and here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.