## WESTERN UNION TELEGRAPH CO. v. WALLER. (No. 7303.)

(Court of Civil Appeals of Texas. Galveston. Feb. 7, 1917. On Motion for Rehearing, April 6, 1917. Appellee's Rehearing Denied Oct. 6, 1921.)

1. **Appeal and error ⊕⟶301—Assignment of error need not have been embodied in motion for new trial.**

Under Supreme Court rule 71a (145 S. W. vii) and Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, assignments of error need not have been embodied in motion for new trial.

### On Motion for Rehearing.

2. **Telegraphs and telephones ⊕⟶68(3)—Damages for mental suffering held too remote.**

Telegraph company, which failed to deliver to husband stepdaughter's message that wife was in a dangerous condition from blood poisoning, and that he should wire money immediately, and other telegram sent on following day that wife's condition was very critical, and that he should come at once, was not liable to husband for mental pain and suffering sustained on receipt of telegram that wife had died, because he was prevented from furnishing wife and daughter financial assistance, and from wiring wife that he had received messages and was going to her on the first train, and delay in the preparation of wife's body for burial; such damages being too remote, contingent, uncertain, and speculative.

3. **Telegraphs and telephones ⊕⟶66(3)—Admission of evidence as to wife's suffering in husband's action held reversible error.**

In husband's action against telegraph company for negligent failure to deliver telegrams informing him of wife's illness, admission of evidence that the wife, prior to her death, kept calling for the husband, and had been very much worried on being told that no response had been received from him in reply to the telegrams, *held* error.

Graves, J., dissenting in part.

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Action by M. S. Waller against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

See, also, 232 S. W. 487.

Hume & Hume, of Houston, for appellant. C. B. Barkley and Woods, King & John, all of Houston, for appellee.

GRAVES, J. Defendant in error, M. S. Waller, as plaintiff, sued plaintiff in error, Western Union Telegraph Company, as defendant, for damages for mental anguish upon allegations hereinafter fully set out. The case was tried before Hon. A. R. Hamblen, special judge of the Eleventh district court of Harris county, sitting with a jury, being submitted by the court upon a general charge, all the material parts of which are also hereinafter copied in full; and upon the jury's returning a verdict—also general—in the sum of $1,100 for plaintiff, judgment was accordingly entered January 17, 1916, in his favor and against defendant for that sum.

Defendant's answer to said cause of action as so pleaded consisted of a general demurrer and 12 special exceptions, all of which were overruled, and a general denial. Defendant filed its motion for new trial within the time allowed, which it later abandoned by not securing action of the court thereon; then still later—that is March 8, 1916, and independently of said motion for new trial and of the grounds therein set up—it filed its assignments of error hereinafter discussed; such of these assignments as have been also presented in its brief in this court were all addressed either to the trial court's action upon the demurrers, general and special, or upon the admission or rejection of evidence; in all instances this action of the court, which is a matter of record wholly apart from the abandoned motion for new trial, was duly excepted to by the defendant. It further duly applied for and perfected its writ of error to this court, and upon such writ of error the trial here is had.

[1] The defendant in error has filed in this court and insisted upon his motion to dismiss the writ of error, mainly upon the ground that the assignments of error contained in the transcript cannot be considered under the statutes and rules, because a motion for new trial was filed and not called to the attention of the trial court, and, under article 1612, Vernon's New Sayles' Statutes, a motion for new trial constitutes the assignments of error, and a totally different set of assignments attempted to be filed is not entitled to consideration. In this motion he concedes that this court has jurisdiction of the case, due to the perfection of the writ of error, but insists that it should dismiss the writ for noncompliance with the rules and the statutes. His contention is that under rule 71a by the Supreme Court (145 S. W. vii) and said article 1612, this court cannot consider said assignments of error, because they were not embodied in the motion for a new trial shown by the record to have been duly overruled. We cannot sustain this contention, nor so construe said article 1612, but we think the plain purpose of said article was to permit such assignments to be filed either in or independently of the motion for new trial. W. U. Tel. Co. v. Mitchell, 89 Tex. 441, 35 S. W. 4; American Life Ins. Co. v. Rowell, 175 S. W. 170; May v. Waniger, 164 S. W. 1106; Lee v. Moore, 162 S. W. 438; Sargent v. Barnes, 159 S. W. 368; Conn v. Rosamond, 161 S. W. 73; Rail-

(233 S.W.)

way v. Beasley, 106 Tex. 160, 155 S. W. 183, 160 S. W. 471; Davis v. Parks, 157 S. W. 449; Stein Tire Co. v. Fulton, 159 S. W. 1013; Craver v. Greer, 107 Tex. 356, 179 S. W. 862; Thompson v. Price, 157 S. W. 288; Gulf, T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 187 S. W. 184. Accordingly we overrule the motion to dismiss the writ.

Coming now to the merits of the appeal: Since the evidence in all substantial and material respects established the facts as pleaded by plaintiff, including the telegraph company's negligence, since, further, on page 2 of its brief filed in this court it has admitted that it was guilty of the negligence charged, we omit from both the plaintiff's pleadings and the court's charge the averments of, and the instructions concerning, this negligence as nearly as may be. In all other material respects the allegations of plaintiff were as follows:

"That on said 29th day of August, A. D. 1906, plaintiff's wife and stepdaughter, Miss Genevieve Chilson, were sojourning temporarily in the city of Denver in the state of Colorado, and were then stopping at the Shirley Hotel in said city; that on said date, to wit, August 19, 1906, plaintiff and his wife and stepdaughter had their domicile and home in the city of Houston, Harris county, Tex., and they were on said date in the city of Denver, and his said wife and stepdaughter were on said date in the city of Denver spending a part of the summer; that when plaintiff and wife and stepdaughter last parted plaintiff's wife was apparently in good health; that it was understood and arranged between plaintiff's wife and himself and stepdaughter that they were to be supplied by plaintiff with money and funds as needed on their summer vacation while visiting Denver, and that they might inform him of said needs either by telegraph or letter.

"That plaintiff was at said time, to wit, August 29, 1906, and at all times thereafter and at the time of separating from his wife, financially able and willing to gratify all their wants and meet any demands for money made by them to him.

"That on said August 29, 1906, plaintiff's wife, who was then located in the city of Denver, as aforesaid, was taken suddenly and dangerously ill to such an extent as to utterly prostrate her, and confine her to her bed and room, and require the attention of a physician and surgeon; that plaintiff's wife and stepdaughter were utter strangers in the city of Denver, having no friends and associates to appeal to for assistance or financial aid, but were at said time and on said date entirely dependent for financial aid, for counsel and assistance, on this plaintiff; that his stepdaughter, Genevieve Chilson, was a young lady, inexperienced, and who had never had to rely upon herself in case of emergency or otherwise; that plaintiff had formerly resided in the city of Denver and other portions of Colorado, and had many friends and acquaintances residing in the city of Denver on said 29th day of August, 1906, but none of them knew or were acquainted with either his wife or stepdaughter, Miss Chilson.

"That plaintiff's stepdaughter, being at the bedside of her sick mother, and the only companion and adviser, on August 29, 1906, at the instance of her mother and in her own behalf and in the behalf of this plaintiff, delivered to defendant company at its office in the city of Denver the following messages, and paid for the same the compensation demanded by said company, which was the usual and customary charges therefor, said messages so delivered were in substance as follows: 'Denver, Colorado, Aug. 29th, 1906. Judge M. S. Waller, 22 and 23 Masonic Temple, El Paso, Texas. Moved Mama to hospital tonight. Will operate tomorrow, very dangerous condition, blood poisoning, wire money immediately, am very worried. Genevieve.'

"And also the following: 'Denver, Colorado, Aug. 30th, 1906. Judge M. S. Waller, Room 22 Masonic Temple, El Paso Texas. Doctor obliged to perform big operation to save mama's life, very critical condition, come at once. Genevieve.'

"That said messages and telegrams as indicated by their terms were intended to inform plaintiff of two things: First, the dangerous sickness of plaintiff's wife; and, second, that she, Genevieve Chilson, plaintiff's stepdaughter, and plaintiff's wife, were destitute of money, and were in distress and in need of money at once to relieve plaintiff's wife and stepdaughter of their distress and needs and to have plaintiff come to their assistance at once.

"That said corporation did not transmit and forward said two telegrams, or either of them, as herein set out, from El Paso to Marfa on the 30th day of August, 1906, or at any other date, but delivered same to plaintiff at his special solicitation, instance, and request in the city of El Paso on September 1, 1906.

"That on August 31, 1906, plaintiff, while still sojourning at his hotel at Marfa, Tex., as hereinabove alleged, did receive a telegram sent to him by way of Galveston, from his stepdaughter, Genevieve Chilson, which said telegram was in substance as follows: 'Denver, Colorado, August 31st, 1906. M. S. Waller, Mother had serious operation yesterday, died this morning. Genevieve Chilson.'

"That that was the first information plaintiff received of the illness of his wife and the condition and situation of her and his stepdaughter, and that immediately upon receipt of same, which was about the noon hour on August 31, 1906, plaintiff telegraphed to friends in Denver, and other points near there, and advised them of the death of his wife, and of the situation of his stepdaughter alone with the corpse of her said mother, and among strangers and without funds, and requested them to go to her assistance at once and render to her all assistance, financially and otherwise, necessary, and to see to the burial preparations and preparing of the body for burial and embalming same, and to furnish a burial casket, and to do any and all other things necessary and proper in the premises, and to relieve the distressed condition of his said stepdaughter's mind in so far as possible.

"That he also immediately telegraphed to his said stepdaughter at Denver that he had telegraphed to friends in and near Denver to furnish her with money and all other assistance necessary and proper, and also instructed her as to her conduct in the premises, and that he would go to her on the first train.

"Plaintiff would further represent that Marfa

was a small town with no bank, and plaintiff could not remit money to his stepdaughter by the usual course by telegraph, but that he did the next best thing, and that was to telegraph his friends, as above alleged, who were amply able and willing to render to her all of the assistance requested, and they did upon receipt of the said telegrams to them, which was late in the afternoon of the said 31st day of August, 1906, call at the hotel where the body of his said wife was then lying, and where his said stepdaughter was still staying, and arranged to have said body embalmed and prepared for burial, and took charge of her said remains, and in so far as possible to do so relieved the distress of mind of his said stepdaughter, and arranged to have her cared for until the arrival of plaintiff.

"That by reason of the negligence of the defendant plaintiff was prevented for a period of 36 hours from learning the condition and situation of his wife and stepdaughter, and was prevented for said period of time from telegraphing them money needed by them in their distress, and was prevented from contributing those last testimonials of love so naturally prompted by the circumstances, which he would have contributed to his wife by means of defendant's telegraph wires prior to her death, and was prevented from informing his wife in her last illness and his said stepdaughter that he would go at once to Denver, and be with them and give them his assistance and aid in their distressed condition, and further was prevented from being with them for the period of 36 hours, in that plaintiff would have started on his way from Marfa, Tex., to Denver, Colo., August 30th, instead of August 31st, as he was forced to do by reason of not receiving said information promptly, as herein stated, and further was prevented by said negligence from informing his wife and stepdaughter to whom they could apply among his friends and acquaintances in the city of Denver for aid, assistance, and comfort in their distressed condition and situation; that because of said negligence on the part of defendant, its agents, servants, and employees, as above alleged, his said stepdaughter and his wife, for a period of from 18 to 20 hours before the death of his said wife, were alone among strangers, without funds, and dependent entirely for all that they received, including medicine and medical attention, hospital fees, and everything else, upon people charitably inclined, and his said wife died without ever having a last message from him, and believing that he was ignoring the appeals sent to him by telegraph as above alleged, and his said stepdaughter was left among strangers, in a strange land, with the corpse of her mother, unprepared for burial, and no burial arrangements or preparations made for at least 12 hours after the death of his said wife, during all of which time she was wholly without funds, which conditions would not have existed had said telegram been transmitted and delivered as defendant, its agents, servants, and employees contracted to transmit and deliver, because of all of which plaintiff has suffered, and continues to suffer, great mental pain, poignant grief, distress of mind, mental anguish, humiliation, and mortification, to his damages in the sum of $1,995."

Aside from its reference to defendant's negligence, the relevant parts of the court's charge were as follows:

"If you believe that such failure prevented plaintiff from furnishing financial assistance to his wife at Denver, and that plaintiff was prevented from wiring his said wife that he had received said messages and was going to her on the first train, if you should believe that if he had received said messages he would have supplied his said wife with money, and would have wired her that he was going to Denver on the first train, and that he would have done so; if you further believe that the corpse of plaintiff's said wife was unprepared for burial at Denver for an unreasonable length of time, and if you further believe that because of such facts, if the facts you so find to be, plaintiff suffered grief or mental anguish; and if you further believe that the defendant should have contemplated that if said messages were not delivered plaintiff would suffer such grief or mental anguish—then you will find in favor of plaintiff and assess his damages in such sum as you may believe from the evidence will reasonably and fairly compensate him for such grief and mental anguish, if any, suffered by him.

"Should you not believe from the evidence that, had plaintiff received said two messages, he could and would have rendered the said Genevieve Chilson financial aid in time to have the corpse of his said wife prepared for burial immediately after her death; or if you do not believe from the evidence that, had plaintiff supplied the said Genevieve Chilson with the necessary funds, she would have caused the body of plaintiff's wife to have been prepared for burial within a reasonable time after her death; or if you do not believe from the evidence that said Genevieve Chilson was without money or financial aid at the time and under the circumstances submitted in the preceding paragraph of this charge; or if you should believe that the failure to have the body of his wife prepared for burial within a reasonable time after her death, if you have so found, did not cause the plaintiff to suffer humiliation, mortification, or distress of mind; or if you should believe that at the time and under the circumstances in the preceding paragraph of this charge that the said Genevieve Chilson was without money or financial aid, and because of which the body of plaintiff's wife was not prepared for burial within a reasonable time after her death, and because of which plaintiff suffered humiliation, mortification, and distress of mind, but do not further believe from the evidence that the defendant at the time of receiving said messages should have reasonably contemplated that plaintiff was likely to suffer some such humiliation, mortification, and distress of mind if the said Genevieve Chilson and her mother did not promptly receive money or financial aid—then and in either of such events you will let your verdict be for the defendant."

The first 12 assignments of error raise, in varying forms, but one question, which goes to the very foundation of plaintiff's case, and which, by largely adopting the language of plaintiff in error, may be stated as follows:

The mental anguish alleged was not the proximate result of defendant's negligence. And that the damages were too remote, contingent, uncertain, and speculative, and that there was no ground or element of recoverable or actionable damages alleged and proved.

Recognizing that the lines of cleavage between recoverable and nonrecoverable elements of damages in exclusively mental anguish cases are very close, and while adhering—both upon principle and in deference to well-established authority in Texas—to the doctrine allowing recovery in such cases, yet this court does not desire to undertake any elongation nor extension of it; each case must largely rest upon its own foundations. For this reason we have above recited the case as pleaded and as explained in the court's charge a little more fully than would otherwise have been necessary.

We cannot therefore go with some of the cases cited by the telegraph company into a discussion of the fundamental question of whether or not mental anguish alone is ever an actionable element of damage. It being, as before stated, no longer an open question in Texas, we pretermit any consideration of it, and content ourselves with here citing some of our cases so holding: W. U. Tel. Co. v. Chilson, 168 S. W. 878 (writ of error denied by Supreme Court); Goodwin v. W. U. Tel. Co., 160 S. W. 107; McFarlane v. W. U. Tel. Co., 161 S. W. 57; W. U. Tel. Co. v. Richards, 158 S. W. 1187; W. U. Tel. Co. v. Simpson, 73 Tex. 430, 11 S. W. 385; S.W. Tel. & Tel. Co. v. Pearson, 137 S. W. 736; Stuart v. Tel. Co., 66 Tex. 580, 18 S. W. 351, 59 Am. Rep. 623; Tel. Co. v. Copper, 71 Tex. 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772; Tel. Co. v. Richardson, 79 Tex. 649, 15 S. W. 689; Tel. Co. v. Rich, 59 Tex. Civ. App. 395, 126 S. W. 687; Tel. Co. v. Quigley, 129 Ky. 788, 112 S. W. 897, 19 L. R. A. (N. S.) 575; S. W. Tel. & Tel. Co. v. Allen, 146 S. W. 1066; S. W. Tel. & Tel. Co. v. Gehring, 137 S. W. 754.

We think the contents of the two messages sued upon here were in themselves such that the telegraph company might reasonably have anticipated the conditions and consequences shown to have existed and resulted, but, if there be doubt about that, that they were clearly sufficient to put it upon notice that such conditions and consequences might exist and result, and so to cast upon it the duty of making inquiry and seeking further information. See Tel. Co. v. Hendricks, 26 Tex. Civ. App. 366, 63 S. W. 341; Tel. Co. v. Snodgrass, 94 Tex. 284, 60 S. W. 308, 86 Am. St. Rep. 851; Tel. Co. v. Gamble, 101 S. W. 1166.

It is very conclusively shown in the evidence that, had it made such inquiry, it could have quickly obtained the facts and have been in position to have entirely avoided the negligence it has thus confessed in this court. Nor is it any answer to plaintiff's violated rights here to say, as the telegraph company so earnestly insists in this court, that he suffered uselessly and unnecessarily, and therefore cannot recover damages, because his wife and daughter wanted for nothing, everything needed having been supplied by "strangers and · those charitably inclined." Even if the correctness of this statement as to what happened were conceded, that very fact, under the circumstances here, as we view it, established the right of action in plaintiff, for the very plain reason that it was his right and privilege to be himself allowed to supply the needs of his dying wife and worried daughter, and not to be compelled by the telegraph company's negligence to leave them to the ministrations of "strangers and those charitably inclined"; and this still further for the much more emphatic reason that through his lack of knowledge as to how they were faring, caused directly by the company's negligence, he suffered first, and that continuously throughout a period of 36 hours, and then discovered that they had been so furnished by strangers. Does this obliterate the fact that he had so suffered? The evidence is undisputed that he very keenly suffered in anticipation of and worry about the privations his dying wife and worried daughter—penniless and alone in a strange city among and wholly dependent upon strangers—must have, as he then thought, endured in that fateful two days between about 10 or 11 o'clock a. m. of August 30th and late in the afternoon of August 31st, and until they had been at this latter hour relieved by his friends; because, on arriving at El Paso, he knew all the facts of their condition and their need which had been stated in these first two messages, and he then also further knew, from the third telegram he had previously received at Marfa, that they could not have been relieved for those two days by or through him or his friends; and further because, he did not know until he reached Denver—36 hours still later—that they had not in fact endured such privations as he had thus anticipated and feared they would. How can this subsequent knowledge that his fear had been unfounded, and his consequent suffering from that one cause alone unnecessary, obliterate the accomplished fact that he had already as poignantly endured that suffering? Further how could this subsequent knowledge possibly relieve the telegraph company from its direct responsibility for having, through its admitted negligence, solely caused him to endure that experience? Here is furnished, we think, a parallel in principle to the case of Telegraph Co. v. Rich, 59 Tex. Civ. App. 395, 126 S. W. 687, which was an action for failure to deliver a message advising plaintiff that yellow fever was prevalent in San Antonio, where he was going. The message was

not delivered, he went there not knowing of the existence of yellow fever there, and was compelled to remain about 19 hours before he could get a train home. He claimed to have suffered mental anguish while there because of the fear that he would contract yellow fever, and that he might be quarantined and kept from home for an indefinite period. The court in upholding his right to recover said:

"The fact that yellow fever is a contagious disease or infectious, and in a large per cent. of cases a fatal, disease, is a matter of general knowledge, and is abundantly established by the evidence in this record. It is also a matter of common knowledge, that the methods of preventing the spread of the disease are vastly more effective now than they were in 1903, when this fever was discovered in San Antonio, and that at that time, whenever the yellow fever was discovered in a community, fear that it would become epidemic was almost universal, and in view of its fatal character we do not think it can be said, as a matter of law, that a person of ordinary firmness, intelligence, and courage would not have suffered mental anguish by having to remain in a community in which the disease had appeared. The agent of appellant knew the purpose for which the telegram was sent, and we think that he might reasonably have anticipated that, if it was not delivered promptly, appellee would go to the infected city in ignorance of the fever, and that when he discovered the fact that there were cases of yellow fever in the city he would suffer mental anguish through fear of contracting the disease. The fact that it may have subsequently developed that he was in no actual danger is immaterial. If he suffered from a reasonable apprehension of contracting the disease, under the circumstances as then known to him and to the appellant, the latter is liable for the mental anguish thus caused by its failure to comply with its contract to use reasonable care to make timely delivery of the telegram.

"We think it also follows, from the facts before stated, that appellee's apprehension that he would, by the enforcement of quarantine regulations, be kept from his business and family, was such a reasonable and probable result of appellant's negligence in the matter of the delivery of the telegram as would render it liable for the mental anguish of appellee caused thereby."

But the humiliation arising from contemplation of the embarrassment and hardships he thought his loved ones had been compelled to undergo was neither the only, nor by any means the most severe, element of mental anguish the plaintiff here was shown to have endured. It may be well to preface the recital of his further sufferings with the statement that this record is as silent as the tomb of his dead wife as to any suggestion or intimation of any lack between them of the usual mutual affection and consideration obtaining between husband and wife, or of any other condition which, upon his part, might have rendered him indifferent about promptly claiming, meeting, and discharging every privilege and duty towards his family; rather the contrary appears. This being so, it was further alleged and shown that his being deprived of the opportunity of himself directly communicating through messages to his wife those last testimonials of love and affection before her death caused him great sorrow and grief.

Then, finally, the knowledge that came to him on reaching Denver that his wife's body, for a lack of money, had lain unprepared for burial for what the jury must, under the court's charge, have found was an unreasonable length of time, to wit, more than 12 hours, might, and we are told by him did, add sorrow's crown of sorrow to this man's mental suffering.

Another very plausible contention of counsel for the telegraph company is that what plaintiff really suffered from was the death of his wife, caused by the intervention of a Higher Power, and hence there was no causal connection between such suffering and the company's negligence. The answer to this position is twofold: In the first place, the above-cited authorities hold that recovery may be had in such cases for any increased pain or suffering that may have been sustained because of the negligent failure to deliver the telegram; in the second place, we do not think it could be said that the suffering here shown was either the result of "morbid sensitiveness," or of what is termed reflex or sympathetic suffering, that is, having its origin in, and based solely upon, the suffering of others, and but for which it would not exist at all; but it was rather the independent feeling of a sentient being—proud, perhaps, and certainly affectionate towards his wife and daughter, not only capable of, but also anxious, ready, and willing to claim, every privilege of love and relationship and to supply every need, financial and otherwise—originating in and directly arising from the invasion and wounding of his own individual sensibilities and affections.

Consequently, holding as we do, that the petition stated, and the charge submitted, a proper and recoverable cause of action, without the citation of additional authorities, we overrule the first 12 assignments.

The second group of assignments—that is, 13 and 14—challenge the court's action in admitting over objection testimony to the effect that prior to her death plaintiff's wife kept calling for him, and had been very much worried on being told that no reply had been received from him. The bills of exception show that the court admitted this testimony solely for the purpose of showing the mental and physical condition of plaintiff's wife. Under all the circumstances here we cannot say that this was prejudicial error. Recurrence now, for a moment, to the court's

charge, as quoted, will show that plaintiff's right to recover was very plainly restricted to his own mental suffering and anguish, and not that of his wife; and, having no right to consider this testimony, except as bearing upon plaintiff's state of mind, it will not be presumed the jury violated their instructions and did so.

Nor can we say that this evidence, taken in connection with the other circumstances in this case, could not be properly considered by the jury in estimating the feelings of this plaintiff for his wife, or of the mutual feeling between them, and therefore as tending to show whether or not he really suffered as alleged. It therefore seems to us that the principle announced in Tel. Co. v. Lydon, 82 Tex. 364, 18 S. W. 701, and Tel. Co. v. Adams, 75 Tex. 535, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920, applies here. Accordingly we overrule both these assignments.

By its third group of assignments, 15 to 18, inclusive, the telegraph company complains of the admission over its objection of the testimony of plaintiff's stepdaughter to the effect that she had no money, nor friends upon whom she could call for aid, and that the same was furnished to her by strangers. Believing that this evidence was directly material to the issues properly made by the pleading under the court's charge, for the reasons given in our discussion of the first 12 assignments, we likewise overrule these.

Having already held that the matters complained of in the last group of assignments, 19 to 21, inclusive, constituted a recoverable cause of action in plaintiff, it follows that the court did not err in permitting him to testify to them.

This disposes of all the questions raised, and finding no reversible error in the record, the judgment of the trial court will be in all things affirmed.

Affirmed.

## On Motion for Rehearing.

In our original opinion the main contentions of the telegraph company in this case were summarized as follows:

"The mental anguish alleged was not the proximate result of defendant's negligence, and that the damages were too remote, contingent, uncertain, and speculative, and that there was no ground or element of recoverable or actionable damages alleged and proved."

[2] After much deliberation, and not without some hesitation, the questions so stated were resolved adversely to the plaintiff in error, and going, as they necessarily did, to the foundations of the case, that conclusion —in the absence of a holding that there was other reversible error—led to the affirmance of the trial court's judgment. But after a further consideration upon rehearing of all questions presented, much aided by the very able and comprehensive additional brief filed by plaintiff in error, the majority of the court have reached the conclusion that our former determination of this fundamental question was error, and that this basic contention of the telegraph company that the damages alleged were too remote, contingent, uncertain, and speculative must be sustained.

In arriving at this conclusion, a re-examination of the adjudicated cases in Texas has convinced the majority of this court that our original opinion would extend the mental anguish doctrine in this state beyond what has heretofore been regarded as its legitimate confines; that the Rich Case, 59 Tex. Civ. App. 395, 126 S. W. 687, quoted from in the original opinion, may be distinguished from the case at bar, and is therefore not strictly analogous with it, in that in that case there was an actual, reasonable ground of fear and apprehension of contracting said contagious disease directly and proximately resulting from defendant's failure to deliver a telegram warning Rich not to go to said place; while here it is thought that what defendant in error really suffered from was the illness and death of his wife in his enforced absence, and that therefore his were reflex injuries to the feelings from mental distress of another, or mere sympathetic mental anguish, which are not in any event recoverable; that there is lacking a proximate cause—the negligence of the defendant is not shown to have proximately resulted in an injury to the feelings of plaintiff himself of such a nature as the law recognizes—and that the facts of the instant case make it more nearly analogous to the case of Telegraph Co. v. Young, 61 Tex. Civ. App. 232, 130 S. W. 257.

Since this determination of the controlling questions presented necessarily involves the finding that defendant in error was not entitled to recover, it is deemed unnecessary to discuss other questions presented in the motion for rehearing, except the assignment that this court erred in holding that no reversible error was committed below in admitting, under the circumstances shown, the testimony relating to the state of mind of defendant in error's wife.

In support of the above-stated conclusions of the majority of the court, the following authorities are collated and cited: W. U. Tel. Co. v. Young, 61 Tex. Civ. App. 232, 130 S. W. 257; Tel. Co. v. Luck, 91 Tex. 178, 41 S. W. 469, 66 Am. St. Rep. 869; Tel. Co. v. Edmundson, 91 Tex. 206, 42 S. W. 549; Tel. Co. v. Linn, 87 Tex. 7, 26 S. W. 490, 47 Am. St. Rep. 58; Tel. Co. v. Motley, 87 Tex. 38, 27 S. W. 52; Tel. Co. v. Coffin, 88 Tex. 94, 30 S. W. 896; Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826; Tel. Co. v. Wilson, 97 Tex. 22, 75 S. W. 482; Tel. Co. v. Kuykendall, 99 Tex. 323, 89 S. W. 965; De Voegler v. Tel. Co., 10 Tex. Civ. App. 229, 30 S. W. 1107; Ricketts v. Tel. Co., 10 Tex. Civ.

App. 226, 30 S. W. 1105; Ratliff v. Tel. Co., 183 S. W. 78; Tel. Co. v. Chamberlain, 169 S. W. 370; Tel. Co. v. Sherlin, 184 S. W. 310; Tel. & Tel. Co. v. Wilcoxson, 129 S. W. 868; Tel. Co. v. McNairy, 34 Tex. Civ. App. 389, 78 S. W. 969; Tel. Co. v. Steenbergen, 107 Ky. 469, 54 S. W. 829; Tel. Co. v. Vickery, 158 S. W. 794; Hancock v. Tel. Co., 137 N. C. 497, 49 S. E. 952, 69 L. R. A. 405; Tel. Co. v. Birchfield, 14 Tex. Civ. App. 664, 38 S. W. 635; Tel. Co. v. Reed, 37 Tex. Civ. App. 445, 84 S. W. 296; Tel. & Tel. Co. v. Thomas, 185 S. W. 396; Goodwin v. Tel. Co., 160 S. W. 107; Tel. Co. v. McFarlane, 161 S. W. 57; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

From the views of the majority of the court thus expressed and the consequent decision rendered, the writer, adhering as he does to the contrary position as stated in the original opinion, respectfully dissents. It is, for the reason stated in the former opinion, not thought by him that the principle applied to the developed facts of the Young Case, 61 Tex. Civ. App. 232, 130 S. W. 257 (and the line of cases cited supporting it), in which recovery was sought in behalf of both the husband and wife, rules the case at bar.

If it be true that, under the peculiar facts shown here, it would, under the precedents of our decisions, be an extension of the mental anguish doctrine in Texas to allow defendant in·error a recovery in his own right for the suffering he endured, it is respectfully suggested that the extension should be made, for the simple reason that it is fundamentally right in principle. Hence, without lengthening the statement of this dissent, under the conviction that the original opinion is right, it is here reiterated as the view of the writer.

[3] But the court all agreed, upon the reconsideration of the question, that we erred in holding that no reversible error was committed by the trial court in admitting testimony to the effect that, prior to her death, defendant in error's wife kept calling for him, and had been very much worried on being told that no response had been received from, etc. A further examination of the cases of Tel. Co. v. Lydon, 82 Tex. 364, 18 S. W. 701, and Tel. Co. v. Adams, 75 Tex. 535, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920, especially as construed in Tel. Co. v. Stiles, 89 Tex. 312, 34 S. W. 438, and Tel. Co. v. Waller, 96 Tex. 589, 74 S. W. 751, 97 Am. St. Rep. 936, has convinced us that they furnish no authority for our former holding, and that the testimony should have been excluded. Defendant in error could not in his own right recover for the mental suffering and anguish of his wife, but only for his own, and while the court so restricted his right of recovery, still the jury may have been unduly influenced by the prominence thus given the deathbed scene presented for their con-

sideration. As the verdict was for a lump sum, it is not possible to say what part of it might have been awarded for an improper and nonrecoverable element of damage, to wit, the mental anguish of the wife. For this reason alone the case would have to be reversed, and in the opinion of the writer it should be on that account remanded for a new trial; but in obedience to the majority opinion the motion for rehearing has been granted, and the cause will be here reversed and rendered for plaintiff in error.

Reversed and rendered.

GRAVES, J., dissenting in part.