**WESTERN UNION TELEGRAPH CO. v. HOUSE. (No. 3155.)**

(Court of Civil Appeals of Texas. Texarkana. March 17, 1926. Rehearing Denied March 25, 1926.)

**Telegraphs and telephones ⬳53—Damages for increased mental suffering, caused by delay in delivering telegram, cannot be recovered by sender already suffering through erroneous belief as to mother's death.**

Sender of telegram, suffering mental anguish because of erroneous information that his mother was dead, cannot recover damages for increased mental suffering caused by delay in delivering telegram sent to father to ascertain truth of mother's condition, since suffering in its inception was not proximately caused by fault of telegraph company.

Appeal from Smith County Court; Will D. Pace, Judge.

Action by Lloyd House against the Western Union Telegraph Company. Judgment for

plaintiff, and defendant appeals. Reversed and rendered.

The appellee brought the suit against the telegraph company to recover damages suffered through alleged negligent delay in the delivery of the following message:'

"Tyler, Texas, July 28, 1924.

"B. S. House, Decatur, Texas. Wire condition of Mother at once.          Lloyd House."

The sender of the message was the son of B. S. House. The "mother" in the message was the wife of B. S. House and the mother of the sender, Lloyd House. The message was forwarded from Tyler at 11:12 o'clock a. m., July 28, 1924, and received at the Decatur office at 11:35 o'clock a. m. the same day. It was not delivered to the addressee, who resided five miles from Decatur, until July 29, 1924, at about noon. The petition seeks damages for the "intensified and greatly increased anxiety, uneasiness, grief, and mental pain and anguish about his mother" undergone by the plaintiff "during all of said time that the defendant carelessly and wrongfully delayed the delivery of said telegram."

The defendant filed a general denial and specially pleaded in bar of recovery contributory negligence of the plaintiff, and certain stipulations contained in the message and a part of the message contract.

The case was submitted to a jury on special issues, and in keeping with their findings of fact the court entered judgment in favor of the plaintiff.

The evidence is without dispute in most respects. The occasion for sending the message is thus briefly stated by the appellee:

"I work for the Baldwin Motor Company in Tyler. My mother and father in July, 1924, were at Decatur, Tex., and were living five or six miles from that place. My brother Roy, a short time before sending the telegram in question, was visiting in Tyler, and he was called home on account of my mother having become sick. On the day (Monday) I sent this telegram Mr. Holt, who knows my father and mother, saw me working and asked me why I was working, and told me that he heard that my mother had died on the Sunday previous. I told him I had not heard anything about it, and I had no reason to believe that my mother was dead. I then immediately began to get into communication with B. S. House, my father. I was disturbed when I heard this communication. I knew that she had been taken suddenly ill; I believed that she was dead. I had not heard from her. The message I sent was sent for the purpose of finding out and getting a little relief. I expected to hear that she either was dead or was not dead."

The appellee received the information from Mr. Holt about 10 o'clock a. m., and he then went into the office of the Baldwin Motor Company and had the clerk there write out the message in evidence and forward it. The clerk testified:

"On July 28, 1924, I sent a telegram for Lloyd House to B. S. House at Decatur, Texas. I wrote out the message myself and signed the name of Lloyd House to it. I wrote out this message for Lloyd House at his request. After I wrote out the message I telephoned the local office of the Western Union Telegraph Company at Tyler, Texas, from the office of the Baldwin Motor Company, and asked the office to send some one to the Baldwin Motor Company for a telegram. In response to that request a messenger boy came for the message, and I delivered it to him. I explained to him that Mr. B. S. House lived five or six miles from Decatur, and that the Baldwin Motor Company for Lloyd House would pay whatever special messenger fee was necessary for the delivery of the message. I told the messenger boy the direction that B. S. House lived from Decatur. I impressed on the messenger boy the importance of getting a reply at once, and that Lloyd House had just been informed that his mother was dead and wanted to know at once if it was true. The Baldwin Motor Company had a regular charge account with the Western Union Telegraph Company, and I had the company to charge the fee for sending this message."

The messenger boy promptly came for the message and received it and carried it to the telegraph office, and the telegraph agent immediately forwarded it to Decatur. The messenger boy testified:

"The man who gave me the message did not state anything to me about where the addressee lived, nor about paying any special fee for delivering it. He did not say whether the addressee lived in the country or not."

After the message was received at the Decatur office, at 11:35 a. m., the day it was sent, the messenger boy there made effort to deliver it in the town limits, making several rounds in the afternoon to do so, and failed to locate or hear about the addressee. The next morning about 7 o'clock the messenger boy heard where the addressee lived, and the agent then sent the message by the rural route carrier. The carrier delivered the message at the house of the addressee about noon. The addressee saw and read the message about 1 o'clock, but he did not reply to the same, for the reason, as he states:

"My boy went over [to a neighbor's] and talked to Lloyd over the telephone and told him that his mother was not dead. I would have answered the message had it not been for the telephone call."

It appears that the appellee, about noon of the 29th, put in a telephone call for his father through the telephone of Mr. Clark, a neighbor of the father. As appellee testified:

"I called up over the telephone and asked to talk to my father at Mr. Clark's phone. My brother Roy went to the telephone of Mr. Clark and talked to me, and I found out from him that my mother was not dead. My father did not have any conversation with me."

It appears that twice during the afternoon of July 28 the clerk at the Baldwin Motor

Company, for appellee, made inquiry of the Tyler office concerning the message, and had service messages sent to Decatur regarding the delivery. The Decatur office received but did not answer the service messages until the 29th. The clerk testified:

"I called at the telegraph office at 1:30 p. m., July 28, and had a personal talk with the man at the counter. I offered to pay to send a service message to see if the message had been delivered. I explaind to him that the young man who had sent the message was very much disturbed over the condition of his mother, and that I would pay the amount to get the message delivered. I explained to him that Mr. B. S. House lived in the country, and that we stood ready to pay a special messenger charge."

Appellee in person also inquired several times at the Tyler office about the delivery, and urged a quick delivery. As pertains to his damages appellee testified:

"From the time I sent this telegram on the morning of June 28 throughout the entire day it worried me, I could not rest on account of not hearing from home, and I could not sleep. I was worried. I was worried more the next day, though I went to work. My worry increased. * * * My mother is living. She recovered from that spell. * * * I got the information that my mother was dead about 10 o'clock of the morning of July 28. I at once began to suffer mental anguish. That mental anguish began immediately upon receipt of the information. The purpose of sending the telegram was for no other reason than to ascertain the truth or error of the information. I continued to suffer this mental anguish on account of the information I received that my mother was dead. When I thought it was time to hear from the telegram and I did not hear, the only change in my mental anxiety or sorrow was that it was increased. That anxiety continued until I did hear the next afternoon. * * * I worked two or three hours after I sent the telegram, and then just quit trying to work. I was trying to do all I could to find out something. Then my mental worry increased."

Tom Pollard, of Tyler, and Young & Stinchcomb, of Longview, for appellant.

Butler, Price & Maynor, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). The first proposition of appellant presents the point that the appellee was not entitled to recover damages for increased mental anguish under the circumstances of the case. On Monday morning, July 28, the appellee was informed that his mother died on Sunday, July 27. The mother was sick previous to that date, as the appellee knew, and the appellee thought the information was probably true. As he says, "I believed that she was dead." He suffered distress of mind, because it appeared to him probably true that his mother was dead. In order to ascertain certainly the truth of the matter the appellee sent the message in suit. A prompt delivery of the message would have brought a reply

such as to put an end to the mental anguish the appellee was suffering. The mother in fact was not dead or seriously sick. But the message was not promptly delivered, but unduly delayed, and during this period of undue delay the appellee continued to labor under the belief that his mother was dead. The appellee pleads and claims that during the period of 24 hours or more of negligent delay in delivery of the message to the father he suffered "intensified and greatly increased mental distress, pain, and anguish about his mother." This merely means that the appellee's present or previously existing mental distress "about his mother" was made more intense or stronger for the stated time, as opposed to diminished, on account of the undue delay in delivering the message. There was no new or distinct cause arising for mental anguish "about his mother" aside and apart from the fact, which existed in the first instance before sending the message, that he "believed she was dead." The settled rule in this state, and in accord with legal principles, is that there can be no recovery for damages for mental sufferings, notwithstanding the existence and extent of such suffering, and sufferings in their inception not having been proximately caused by the fault of the telegraph company.

1. The telegraph company is not liable for "a mere continued" mental anxiety or distress, not having caused the anxiety or distress in its inception. Rowell v. Telegraph Co., 12 S. W. 534, 75 Tex. 26, and many cases following it.

2. The telegraph company is not liable for "protracted" or prolonged "mental suffering" or "suspense," not having caused the suffering in its inception. Telegraph Co. v. Edmondson, 42 S. W. 549, 91 Tex. 209; Telegraph Co. v. Griffin, 56 S. W. 744, 93 Tex. 532, 77 Am. St. Rep. 896; and many other cases.

3. The telegraph company is not liable for "increased" mental anxiety, or mental anguish made more intense, not having caused the anxiety or anguish in its inception. Telegraph Co. v. Bass, 67 S. W. 515, 28 Tex. Civ. App. 418, and other cases.

The present case is within the rule. It is closely analogous in the facts, and altogether so in principle, to the following cases: Johnson v. Telegraph Co., 38 S. W. 64, 14 Tex. Civ. App. 536; Telegraph Co. v. Bass, 67 S. W. 515, 28 Tex. Civ. App. 418; Telegraph Co. v. Buckner (Tex. Civ. App.) 269 S. W. 897; McAllen v. Telegraph Co., 7 S. W. 715, 70 Tex. 243, and other like cases.

The appellee relies upon the case of Telegraph Co. v. Cavin, 70 S. W. 229, 30 Tex. Civ. App. 152, and cases there cited. The facts and the principle there are quite different from those in this case. There the mental distress was witnessing the suffering of a sick child unattended and unrelieved by a physician. It was due solely to the fault of

the telegraph company that the physician was absent. The mental distress had origin and inception in the fault of the company. The real producing cause of the distress was the negligence of the company, a distinct and separate agency, and suffering was the result of its negligence, similar to Western Union Tel. Co. v. Brooks (Tex. Civ. App.) 279 S. W. 443. In the instant case the wrongful information to appellee that his mother was dead was not brought about by the telegraph company, or in any way due to its fault. The telegraph company was not the primary cause of the mental distress. This same case was distinguished in the case of Telegraph Co. v. Young, 130 S. W. 257, 61 Tex. Civ. App. 232.

We conclude that the appellant's contention should be sustained; that the damages sought to be recovered are not allowable under the mental anguish doctrine of this state. Accordingly, the judgment is reversed, and judgment is here rendered in favor of the appellant, with all costs.

It becomes unnecessary to decide the other points made in the case.